[No. 42636-6-II.   Division Two.   January 29, 2013.]

CHARLES WOLFE ET AL., *Appellants*, v. THE DEPARTMENT OF
TRANSPORTATION, *Respondent*.

*Allen T. Miller* (of *Law Offices of Allen T. Miller PLLC*), for appellants.

*Robert W. Ferguson, Attorney General*, and *Amanda G. Phily, Assistant*, for respondent.

¶1 HUNT, J. — Charles and Janice Wolfe and John and Dee Anttonen appeal the superior court's summary judgment dismissal with prejudice of their nuisance, negligence, and inverse condemnation claims against the Washington State Department of Transportation (DOT). The Wolfes and the Anttonens argue that the superior court erred in granting summary judgment to the DOT because issues of fact exist concerning each of their claims and exceptions to the public duty doctrine as they apply to their nuisance claim. Holding that the subsequent purchaser rule and the statute of limitations preclude the Wolfes' and the Anttonens' private causes of actions against the DOT, we affirm.

## FACTS

¶2 In 1925-1926, the State constructed a State Route 4 bridge across the Naselle River; the piers supporting this bridge were parallel to the river's flow. According to the Wolfes and the Anttonens, the Naselle River banks remained stable until 1986, when the DOT reconstructed the

bridge and placed new support piers at a 15-degree angle to the river's flow. That same year, Gil Erickson, then owner of property bordering the Naselle River's southern bank 500 feet downstream from the bridge, complained to the DOT that he believed the placement of the new piers had diverted the river toward his property.

¶3 In 2003 and 2004, Charles and Janice Wolfe purchased Gil Erickson's property, which comprised two neighboring parcels. The riverbank along the properties' northern edge was suffering from erosion. Like Erickson, Charles Wolfe believed that the angled bridge piers were causing the river to flow toward his property and to erode the bank in that area, causing a loss of at least 32,000 cubic yards of soil since 1986. Charles Wolfe informed his son-in-law, John Anttonen, about the erosion before later conveying one of the two parcels to Anttonen and his wife, Dee.

¶4 In 2007, the Wolfes quitclaimed one of the parcels to the Anttonens. The Wolfes and the Anttonens (collectively Wolfes) hired environmental engineer Russell A. Lawrence to analyze the bridge and erosion. Lawrence concluded that the bridge piers' placement had redirected the river and had caused the erosion to the properties.

¶5 In June 2010, the Wolfes sued the DOT, alleging nuisance, negligence, inverse condemnation, and violations of the state hydraulic code (ch. 77.55 RCW). The DOT moved for summary judgment, arguing that (1) the superior court should dismiss the Wolfes' Hydraulic Code violation claim because it did not fall within any exception to the public duty doctrine, (2) the subsequent purchaser rule barred the Wolfes' inverse condemnation and nuisance claims because no government action had occurred after they purchased their properties, and (3) the two-year statute of limitations barred the Wolfes' negligence claim. The DOT also submitted its own expert analysis disputing the Wolfes' claim that the reconstructed bridge piers had caused their properties to erode along the river's bank.

¶6 The superior court granted the DOT's motion for summary judgment and dismissed all of the Wolfes' claims with prejudice. The Wolfes appeal.

## ANALYSIS

¶7 The Wolfes argue that the superior court erred in entering summary judgment for the DOT and dismissing its negligence, inverse condemnation, and nuisance claims because issues of fact exist regarding the elements of each of these claims. This argument fails.

### I. STANDARD OF REVIEW

¶8 In reviewing a summary judgment, we perform the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Thus, the standard of review is de novo. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846, *cert. denied*, 552 U.S. 1040 (2007). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider the facts in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300. Summary judgment is proper only if reasonable persons could reach but one conclusion from the evidence presented. *Bostain*, 159 Wn.2d at 708.

### II. STATUTE OF LIMITATIONS; NEGLIGENCE

¶9 The Wolfes first argue that the superior court erred in dismissing the negligence claim component of their 2010 lawsuit because issues of fact exist regarding the cause of the erosion to their properties. Such issues of fact are irrelevant, however, if their claim is barred by the statute of limitations.

■ ¶10 RCW 4.16.130 prescribes a two-year statute of limitations for actions asserting negligent injury to real property. *Wallace v. Lewis County*, 134 Wn. App. 1, 13, 137 P.3d 101 (2006). The Wolfes contend that the superior court erred in dismissing their negligence claim because (1) the question of standing constitutes a genuine issue of material fact, and (2) the "legislative intent" and "failure to enforce" exceptions to the public duty doctrine[1] permit their claim. The DOT argued in its motion for summary judgment, however, and the Wolfes do not contest on appeal, that RCW 4.16.130's two-year statute of limitations for tort actions applies to the Wolfes' negligence claim.

¶11 The Wolfes do not directly contest application of this two-year statute of limitations to their negligence claim.[2] RAP 10.3(a)(6). To the extent that their negligence claim rests on DOT's alleged failure to follow the state hydraulic code when it installed the angled bridge piers in 1986, we hold that the two-year statute of limitations bars this claim. Therefore, we need not address whether this negligence claim falls within any public duty doctrine exception.

### III. Subsequent Purchaser Rule; Inverse Condemnation

¶12 Central to the Wolfes' next argument is that the riverbank erosion is a "continuing nuisance" and taking of their property for which the DOT owes them just compen-

---

[1] The public duty doctrine provides that " 'a duty to all is a duty to no one.' " *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006) (quoting *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001)).

[2] Rather, they contend that RCW 4.16.130 merely "restricts the period for which damages may be recovered" and does not bar their action because the riverbank erosion is a continuing *nuisance*, trespass, and *taking* of their property for statute of limitations purposes. Br. of Appellants at 9. Thus, to the extent that the Wolfes' negligence claim rests on the diverted river flow's constituting a continuing nuisance, trespass, or taking, their separate takings claim subsumes these continuing negligence, nuisance, and trespass claims, as discussed with counsel at oral argument. Thus, we do not further address whether the statute of limitations applies to these subsumed claims in either the Wolfes' negligence claim or in the following inverse condemnation portion of our analysis.

sation under our state constitution.[3] Br. of Appellants at 8. As the Wolfes acknowledged at oral argument, what they have characterized as a "continuing nuisance" claim is essentially an unconstitutional taking claim, such that these two claims conflate into a single claim—that the DOT has continually eroded and, thus, taken their riverbank without just compensation, in violation of the state constitution, which is, in short, inverse condemnation.[4] Accordingly, we address the Wolfes' nuisance claim as a takings claim in the context of inverse condemnation. This conflated inverse condemnation/takings claim, however, fails.

■ ¶13 To prevail on an inverse condemnation claim, a party must show that there has been (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation having been paid (5) by a governmental entity that has not instituted formal proceedings. *Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 605-06, 238 P.3d 1129 (2010). The DOT argues that the Wolfes' inverse condemnation claim fails under the subsequent purchaser rule, citing *Hoover v. Pierce County*, 79 Wn. App. 427, 903 P.2d 464 (1995), *review denied*, 129 Wn.2d 1007 (1996). We agree.

■■ ¶14 In *Hoover*, a case on point here, we reinforced the general principle that a grantee or purchaser of land cannot sue for a taking or injury that occurred before he acquired title; rather, the subsequent purchaser may sue only for a *new* taking or injury. *Hoover*, 79 Wn. App. at 433. The Wolfes respond that the subsequent purchaser rule does not apply to block their inverse condemnation action against the DOT because the erosion of their shoreline has

---

[3] The Washington Constitution provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made." CONST. art. I, § 16.

[4] An inverse condemnation claim alleges a governmental "taking" or "damaging" without any formal exercise of the power of eminent domain and without just compensation having been paid. *Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 605-06, 238 P.3d 1129 (2010).

continued unabated (essentially, a "continuing nuisance") since they acquired ownership of the property. Reply Br. of Appellants at 11. Despite the continuing nature of the erosion here, we previously rejected this argument in *Hoover*.

¶15 The Hoovers were subsequent purchasers of land that had experienced flooding problems related to construction of a road 60 years before and a culvert completed 16 years before they purchased the property. *Hoover*, 79 Wn. App. at 428-29. The Hoovers argued that the subsequent purchaser rule did not bar their suing the county because they had experienced flooding problems on multiple occasions since their purchase and, therefore, each new flooding incident gave rise to a new taking claim. These arguments failed. Rejecting the Hoovers' reasoning, we adhered to the established principle that a taking is a privately held right. *Hoover*, 79 Wn. App. at 433. This is so because it is the original owner who suffers from the true harm. Thus, a subsequent purchaser pays a price that presumably reflects the diminished property value in light of this earlier taking; consequently, a subsequent purchaser cannot be said to have suffered any true loss.[5] *Hoover*, 79 Wn. App. at 433-34.

¶16 To bypass this subsequent purchaser rule, "a new taking cause of action *requires additional governmental action*[6] causing a measurable decline in market value." *Hoover*, 79 Wn. App. at 436 (emphasis added). But the Wolfes have neither alleged nor offered evidence of any new governmental action by the DOT or any other governmental

---

[5] Similar to the erosion here, the flooding problems were evident before the Hoovers bought the properties; and a county record contained notice of the land's propensity for flooding. *Hoover*, 79 Wn. App. at 429-30. Based on these facts, we held that the purchase price of the property "either did reflect or should have reflected the diminished value of the land" and that damages are inappropriate when a party has acquired property for a price commensurate with its diminished value. *Hoover*, 79 Wn. App. at 434 (citing *City of Walla Walla v. Conkey*, 6 Wn. App. 6, 17, 492 P.2d 589 (1971), *review denied*, 80 Wn.2d 1007 (1972)).

[6] In reversing the superior court's directed verdict for the Hoovers against the county, we noted that the county had not engaged in any new action that had negatively affected the Hoovers' property. *Hoover*, 79 Wn. App. at 436.

entity contributing to the erosion of their riverbank since they purchased the properties in 2003 and 2004.[7] On the contrary, they allege that the erosion has been ongoing since construction of the new piers some 17 years earlier in 1986. As in *Hoover*, any inverse condemnation of the property here occurred when the Wolfes' predecessor in interest owned the property; thus, presumably the Wolfes' purchase price reflected this diminution in value.

¶17 Although the record does not expressly reflect a reduction in purchase price, it does contain Charles Wolfe's deposition testimony that he was aware the property was eroding before he purchased it. Thus, the Wolfes had the opportunity to negotiate a price that factored in this ongoing erosion and its resultant diminution in property value. As was the case with the Hoovers, the Wolfes have not shown that they have suffered any loss compensable under their inverse condemnation claim that was not already factored into their purchase price. Accordingly, we hold that the superior court did not err in granting summary judgment to DOT on this claim.

¶18 We affirm.

VAN DEREN, J., and BRIDGEWATER, J. PRO. TEM., concur.

Reconsideration denied March 5, 2013.

Review denied at 177 Wn.2d 1026 (2013).

---

[7] In rebuttal closing oral argument, the Wolfes' counsel asserted for the first time that there had been new government action when the DOT installed additional erosion-causing riprap and weir projects along the riverbank near the bridge after the Wolfes purchased and took possession of their properties. In response to the panel's questions, the Wolfes' counsel asserted that he had presented these facts at trial and incorporated them into his arguments in the Wolfes' appellate briefs. After careful review of the record and the Wolfes' briefs, however, we conclude that these statements were material misrepresentations: The Wolfes neither presented these points to the trial court nor argued them in their briefs on appeal.

Furthermore, we find no support in the record before us on appeal for the Wolfes' factual assertions that the DOT installed riprap and weir projects *after* the Wolfes' purchase; therefore, we do not further consider these assertions. But, having no reason to believe that counsel intended to mislead the court, we do not impose sanctions. RAP 18.9(a).