FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 36

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JUSTIN M. NELSON and ALLISA S. ADAMS-NELSON,<br><br>Appellants,<br><br>v.<br><br>SKAMANIA COUNTY, WASHINGTON, and SHANNON FRAME and JANE DOE FRAME, and the community thereof,<br><br>Respondents. | No. 44240-0-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Justin Nelson and Allisa Adams-Nelson sued Skamania County and Shannon Frame, alleging that the County's former landfill operation on adjacent property caused debris to flow onto his property. The County successfully moved for summary judgment arguing that all of Nelson's claims were barred by applicable statutes of limitations. Nelson appeals arguing (1) the trespass from migrating debris is both continuing and abatable and the County is liable for damages until the County removes the debris, (2) if the trespass is not abatable, the County is liable under a theory of inverse condemnation for any takings that have occurred in the 10 years

prior to Nelson filing suit, and (3) the trial court abused its discretion in failing to exclude evidence of a code violation Nelson received four years before filing this lawsuit.

We hold that genuine issues of material fact preclude summary judgment on Nelson's trespass claim. Accordingly, we reverse the trial court's dismissal of Nelson's trespass claim. We also hold that Nelson is precluded by the subsequent purchaser rule from recovering under inverse condemnation, and therefore, we affirm the trial court's dismissal of his inverse condemnation claim. Finally, we hold that the trial court did not abuse its discretion when, at the summary judgment stage of proceedings, it refrained from excluding evidence of Nelson's 2008 code violation. We remand for further proceedings on Nelson's trespass claim.

## FACTS

### A. BACKGROUND

In 2005, Dan Huntington, a prior owner of Nelson's property, filed a complaint with Skamania County alleging that:

> The portion of this property adjacent to County land is directly in the path of a slide that is heavily laden with garbage. The garbage, things like old water tanks, car parts, scraps of metal, etc., is coming out of an old county landfill that was converted to the Mt. Pleasant Transfer Site. The garbage is cluttering up the banks of Canyon Creek [and] interfering with efforts to sell the property.

Clerk's Papers (CP) at 135. The record does not reflect whether the County addressed Huntington's complaint.

In February 2007, Justin Nelson purchased approximately 10 acres of unimproved real property abutting Canyon Creek in Skamania County. The southern boundary of Nelson's property is downslope and contiguous to property owned by the County. From the 1950s until 1978, the County used a portion of its property as a landfill/burn dump. After ceasing

2

landfill/dump operations in 1978, the County began operating a solid waste transfer station on the site. The County engaged in extensive clean-up efforts to remove solid waste which had been on the ground at the site in the 1980s.

Although Nelson visited the property on three occasions before purchasing it,[1] he alleges that he was unaware of the debris because inclement weather hindered his inspection efforts on two visits, and he did not know where the property boundaries were located on the third visit. Shortly after purchasing the property, Nelson commissioned a 2007 survey to confirm the property boundaries, and the surveyor told him that there was "a lot of garbage" on the property. CP at 50.

In October 2008, Nelson showed the property to Washington Department of Fish & Wildlife (WDFW) employee, William Weiler. After seeing the property, Weiler relayed the following to another WDFW employee:

> I have not yet contacted Skamania County, but I find it inconceivable that they didn['t] know about this. Their garbage transfer station was built on the site of their former dump site, and to my understanding, closed in the 1970's.
>
> Clearly, the site was not adequately reclaimed and due to unstable slopes/mass wasting, I was literally walking on cars, car parts, paints, electrical equipment, tires, garbage of all sorts. The area where the garbage originates is a perennial tributary to Canyon [Creek], which continues to slide into Canyon Creek. I observed debris for a good half mile downstream along Canyon Creek, and if I walked further, there is no doubt that the dump materials would have also been in the Washougal River. In my 18 years with WDFW, this is the largest toxic waste site I've ever seen in association with a fishbearing stream. A lot of folks need to look at this and come up with a restoration plan.

CP at 137.

---

[1] Nelson purchased the property from Shannon Frame, a successor owner to Huntington.

3

In November 2008, Department of Ecology Inspector Derek Rockett visited the site with Nelson and Weiler. Rockett concurred with much of Weiler's assessment and noted:

> [F]irst priority at this site should be the prevention of any further solid waste/land slides, possibly through bank stabilization and/or creating a buffer between the edge of the bank and the solid waste from the landfill. An environmental assessment may need to be done and potential restoration will be intense.

CP at 140. A January 2009 minute entry from the Department of Ecology's Environmental Report Tracking System indicates that Ecology would "be following up with the county" on the issue. CP at 140. The record does not reflect whether any follow up occurred or whether the County took any action.

Yakama Nation Fisheries Habitat Biologist Greg Morris visited the site on multiple occasions between 2008 and 2012. Based on his observations, Morris concluded that "it appears that the garbage strewn throughout Mr. Nelson's property and in the creek is of the same source and continuously migrating down the hill from its origin, the old Skamania County landfill." CP at 189.

Certified Geologist Warren Krager visited Nelson's property in 2012. He observed that "large, bulky refuse is largely exposed at and above the ground surface" and that smaller refuse is "thoroughly mixed with silt soil, basaltic gravel and organic matter from natural, long term slope transport processes such as soil creep, freeze-thaw cycles, snow slides, erosion by running water, and sliding and falling aided by gravity." CP at 171. Krager also analyzed aerial photographs from 1993 to 2011 and concluded that August 2009 photographs showed that "a light colored debris flow scar is visible from the Skamania County Transfer Station" that was not present in 2006 photographs. CP at 172.

Krager opined that "multiple landfill refuse laden debris flows from [the County's property] have been moving into the lower ravine on [Nelson's property] from at least as early as summer of 2005 and continuing through late summer of 2009." CP at 172-73. He concluded that "without massive clean up and environmental restoration . . . releases of landfill refuse onto private land and into public water courses will continue unabated for decades into the future." CP at 173.

B.    PROCEDURE

On March 13, 2012, Nelson filed a complaint in Clark County Superior Court, which he later amended on April 17. The amended complaint alleged causes of action against Skamania County for (1) inverse condemnation, (2) private nuisance, (3) public nuisance, (4) common law nuisance, (5) waste, (6) common law trespass, and (7) negligence. The complaint also alleged that the property's former owner, Shannon Frame, breached "his warranties of seizin and right to convey because, at the time of conveyance, a portion of the property was possessed by Skamania County." CP at 13.

The County moved for summary judgment, arguing that Nelson's claims were "barred by limitations, absence of standing and other dispositive defenses." CP at 30. Specifically, the County argued that (1) Nelson's inverse condemnation claim was barred by the 10-year statute of limitations because any potential taking occurred decades before; (2) Nelson lacked standing to bring an inverse condemnation claim under the subsequent purchaser rule; (3) Nelson's claims for trespass and nuisance were, in actuality, negligent damage to real property claims and should be treated as such; (4) Nelson's trespass and nuisance claims were barred by statutes of limitation; (5) the waste statute, RCW 4.24.630, was inapplicable to the facts of this case; and (6)

5

the two-year statute of limitations governing negligent injury to real property barred Nelson's negligence claims. The County also argued that Nelson's suit was retaliatory in nature because, in September 2008, Nelson was cited for a code violation for having a campfire during a burn ban and for clearing brush within 100 feet of Canyon Creek without appropriate permits.

Nelson opposed summary judgment arguing that (1) the statute of limitations should not bar the trespass, nuisance, negligence, and inverse condemnation claims because the debris migration has been continuous in nature, and (2) the subsequent purchaser rule should not bar his inverse condemnation claim because he was unaware of the debris before buying the property and Nelson paid significantly more for the property than Frame. Nelson included affidavits/declarations from Morris and Krager, a certified copy of Krager's Engineering Geologic Reconnaissance and Observation Report, Huntington's 2005 complaint, and the information from Weiler and Rockett with his motions opposing summary judgment. Nelson also moved "under the authority of CR 7(b), ER 401, ER 402, and ER 403" to "exclude all evidence of prior regulatory proceedings against" him. CP at 170, 191.

At the hearing on the County's summary judgment motion, the trial court "indicated [its] intention to dismiss all of plaintiffs' claims against the County other than for 'continuing trespass'" and requested additional briefing on that claim. CP at 216. The court also denied Nelson's request to exclude evidence of Nelson's code violation because his activity on the property "may indeed be relevant as to what [Nelson] may have contributed to whatever's going on that he's alleging on his property" and that such evidence may be "subject to a motion in limine in front of a jury" or a "specific jury instruction" at a later stage in the proceeding. Report of Proceedings (RP) (Oct. 5, 2012) at 13.

In its supplemental briefing, the County argued that "[i]n those cases where a continuing trespass was found, the defendant had continued to actively engage in the tortious conduct which was the subject of the trespass. . . . No comparable circumstances exist here." CP at 217. The County also argued, without evidentiary support, that "the doctrine of continuing trespass is unavailable in this case because that cause of action is possible only if the condition created by the defendant can be removed 'without unreasonable hardship and expense.'" CP at 219. Nelson responded that the County had failed to present any evidence concerning the abatability of the condition and "under the established rule, the limitation period is triggered by continuing *damages*, without regard for continuing *acts*." CP at 230. The trial court ruled that the County was entitled to summary judgment as a matter of law. Later, the trial court amended its ruling to also dismiss Nelson's breach of warranty deed claim against Shannon Frame. Nelson appeals.[2]

ANALYSIS

A.   TRESPASS CLAIM

Nelson argues that the trial court erred in granting the County's motion for summary judgment on its trespass claim because material issues of fact remain concerning the abatability of the condition created by the County's trespass. Nelson has presented sufficient evidence to raise a genuine issue of material fact regarding whether the debris flowing onto his land is abatable. Therefore, summary judgment was not appropriate.

---

[2] Nelson has not challenged the summary dismissal of his claims for (1) private nuisance, (2) public nuisance, (3) common law nuisance, (4) waste, (5) negligence, (6) and breach of Frame's warranties of seizin and right to convey. Accordingly, we refrain from addressing them in this appeal. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

### 1. Standard of Review

We review a trial court's summary judgment ruling de novo. *Torgerson v. One Lincoln Tower LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider "all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Atherton*, 115 Wn.2d at 516. "The moving party is held to a strict standard. Any doubts as to the existence of a genuine issue of material fact is resolved against the moving party." *Atherton*, 115 Wn.2d at 516.

Summary judgment is subject to a burden-shifting scheme. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The initial burden to show the nonexistence of genuine issues of material fact is on the moving party. *Young*, 112 Wn.2d at 225. If the moving party satisfies its initial burden, the inquiry shifts to the nonmoving party to "present evidence that demonstrates that material facts are in dispute." *Atherton*, 115 Wn.2d at 516. "Circumstantial, indirect, and inferential evidence will suffice to discharge the plaintiff's burden" under summary judgment. *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 89, 272 P.3d 865 (2012). A plaintiff "must meet his burden of production to create an issue of fact but is not required to resolve that issue on summary judgment." *Rice*, 167 Wn. App. at 89. However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment should only be granted if the nonmoving party fails to show that a genuine issue as to a material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986).

### 2. Statute of Limitations

The applicable statute of limitations in a trespass case depends on whether the trespass is continuing or permanent. Whether a trespass is continuous or permanent determines when the statute of limitations begins accruing and what damages are available to a plaintiff.

For a permanent trespass, RCW 4.16.080's three-year statute of limitations for trespass upon real property begins accruing immediately.[3] This is because "where a use which causes damage to adjacent property is permanent in nature, its effect upon the market value of that property is also permanent and is ascertainable at the time it becomes known that the use will continue." *Cheskov v. Port of Seattle*, 55 Wn.2d 416, 420, 348 P.2d 673 (1960). With a

---

[3] Contrary to the County's assertions, both negligent and intentional trespass are recognized as continuing torts in Washington (*see Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.*, 130 Wn. App. 926, 941, 125 P.3d 981 (2005), *review denied*, 158 Wn.2d 1011 (2006)) and both are subject to RCW 4.16.080's three-year statute of limitations. *Zimmer v. Stephenson*, 66 Wn.2d 477, 483, 403 P.2d 343 (1965). Four published appellate decisions since the *Zimmer* decision— *Mayer v. City of Seattle*, 102 Wn. App. 66, 75, 10 P.3d 408 (2000), *review denied*, 142 Wn.2d 1029 (2001); *Will v. Frontier Contractors*, 121 Wn. App. 119, 125, 89 P.3d 242 (2004), *review denied*, 153 Wn.2d 1008 (2005); *Wallace v. Lewis County*, 134 Wn. App. 1, 13, 137 P.3d 101 (2006), and *Wolfe v. Dep't of Transp.*, 173 Wn. App. 302, 306, 293 P.3d 1244, *review denied*, 177 Wn.2d 1026 (2013)—have incorrectly stated or implied that negligent trespass claims are subject to RCW 4.16.130's two-year statute of limitations for "relief not hereinbefore provided." But *Zimmer* is explicit about the three-year statute of limitations for negligent trespass upon real property and is binding. *Zimmer*, 66 Wn.2d at 483.

permanent trespass, "the proper measure of damages . . . is the difference in market value of the land before the injury and immediately after." *Cheskov*, 55 Wn.2d at 420.

In a continuing trespass, damage accrues "every day the trespass continues. Every moment, arguably, is a new tort." *Woldson v. Woodhead*, 159 Wn.2d 215, 219, 149 P.3d 361 (2006). Thus, "the statute of limitations does not run from the date the tort begins; it is applied retrospectively to allow recovery for damages sustained within three years of filing." *Woldson*, 159 Wn.2d at 223. Damages are "recoverable from three years before filing until the trespass is abated or, if not abated, until the time of trial[;] . . . prospective damages are not allowed."[4] *Woldson*, 159 Wn.2d at 223.

"[T]he reasonable abatability of an intrusive condition is the primary characteristic that distinguishes a continuing trespass from a permanent trespass." *Fradkin v. Northshore Util. Dist.*, 96 Wn. App. 118, 125, 977 P.2d 1265 (1999). "A trespass is abatable, irrespective of the permanency of any structure involved, so long as the defendant can take curative action to stop the continuing damages. . . . 'without unreasonable hardship and expense.'" *Fradkin*, 96 Wn. App. at 125-26 (quoting *Mangini v. Aerojet-Gen. Corp.*, 12 Cal. 4th 1087, 1097, 51 Cal. Rptr. 2d

---

[4] The County relies heavily on dicta from our decision in *Wallace*, 134 Wn. App. at 13, to argue that actionable damages in continuing trespass may not be attributable to problems existing before the retrospective three-year statute of limitations. "A statement is dicta when it is not necessary to the court's decision in a case. . . . Dicta is not binding authority." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 215, 304 P.3d 914, *review denied*, 178 Wn.2d 1022 (2013). Our discussion in *Wallace* about damage attributable to preexisting problems on the land occurs after our holding that the plaintiff "failed to allege and to show any actionable damage resulting from intentional continuing trespass by the County" and is dicta unnecessary to our holding. *Wallace*, 134 Wn. App. at 17. *Woldson* is explicit in holding that it is immaterial when a continuing tort begins because damage continually accrues until the trespass is abated. *Woldson*, 159 Wn.2d at 223.

272, 912 P.2d 1220 (1996)). The law does not presume that "an encroachment will be permanently maintained," and the "trespasser is under a continuing duty to remove the intrusive substance or condition." *Fradkin*, 96 Wn. App. at 126.

Here, the County moved for summary judgment on the grounds that the resulting condition caused by the trespass was not abatable, precluding the applicability of the rules governing continuing torts. It then became Nelson's burden to establish a material issue of fact concerning whether the condition created by the County's trespass was abatable, and thus, a continuing trespass.

Nelson presented sufficient evidence to raise a genuine issue of material fact concerning whether the damage to his property is abatable. Nelson presented evidence that the Department of Ecology concluded that the "first priority at this site should be the prevention of any further solid waste/land slides" and the potential need for "intense" restoration. CP at 140. In addition, Krager concluded that "without massive clean up and environmental restoration . . . releases of landfill refuse onto private land and into public water courses will continue unabated for decades into the future."[5] CP at 173.

Krager and the Department of Ecology's discussion of restoration raises a genuine issue of material fact as to whether the debris trespassing onto Nelson's property is abatable. Were the debris truly permanent and not abatable, restoration would be a fruitless effort. Moreover, a "trespass is abatable, irrespective of the permanency of any structure involved, so long as the

---

[5] The County argues that Krager's report is inadmissible on procedural grounds. However, CR 56(e) provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." Krager's report, referred to in his sworn affidavit, is certified and is properly before us.

defendant can take curative action to stop the continuing damages." *Fradkin*, 96 Wn. App. at 125-26. Because genuine issues of material fact remain as to whether the trespass is abatable, making it, as yet, unclear when the statute of limitations should run on this claim, summary judgment on this ground is inappropriate.

B    INVERSE CONDEMNATION

Nelson also argues that the County is liable to compensate him under a theory of inverse condemnation. The County contends that the statute of limitations bars this claim or, alternatively, that the subsequent purchaser rule precludes recovery. As explained above, material issues of fact remain concerning the permanency of the County's trespass, making summary dismissal on the statute of limitation grounds inappropriate. However, the subsequent purchaser rule bars Nelson's inverse condemnation. Accordingly, the trial court's summary dismissal of this claim was appropriate.

To prevail on an inverse condemnation action, the plaintiff must establish a "taking" by the government. *Borden v. City of Olympia*, 113 Wn. App. 359, 374, 53 P.3d 1020 (2002). A taking consists of an appropriation of private property without exercise of the power of eminent domain. *Phillips v. King County*, 136 Wn.2d 946, 957, 968 P.2d 871 (1998). A plaintiff must establish more than simply interference with the owner's property rights. Rather, "there must be a permanent or recurring interference that 'destroys or derogates' a fundamental ownership interest." *Keene Valley Ventures, Inc. v. City of Richland*, 174 Wn. App. 219, 223, 298 P.3d 121 (quoting *Borden*, 113 Wn. App. at 374), *review denied*, 178 Wn.2d 1020 (2013).

12

Here, as discussed above, material issues of fact remain concerning the abatability of the condition created by the County's trespass. Therefore, genuine issues of material fact remain as to whether the County has permanently interfered with Nelson's property rights.

However, Nelson's inverse condemnation claim is barred by the subsequent purchaser rule. The subsequent purchaser rule does not allow a purchaser who has bought property previously damaged by a government taking to bring a claim because "it is the original owner who suffers from the true harm" and the subsequent purchaser "pays a price that presumably reflects the diminished property value in light of this earlier taking." *Wolfe v. Dep't of Transp.*, 173 Wn. App. 302, 308, 293 P.3d 1244, *review denied*, 177 Wn.2d 1026 (2013). "Because the right to damages for an injury to property is a personal right belonging to the property owner, the right does not pass to a subsequent purchaser unless expressly conveyed" or there is a new taking that occurs after acquiring the property. *Hoover v. Pierce County*, 79 Wn. App. 427, 433-34, 903 P.2d 464 (1995), *review denied*, 129 Wn.2d 1007 (1996). To establish a new taking, the subsequent purchaser must show additional governmental action that causes a measurable decline in market value. *Wolfe*, 173 Wn. App. at 308-09.

Here, the County's debris flow clearly began damaging Nelson's property long before he purchased it. The statutory warranty deed conveying the property to Nelson does not expressly include the right to recover for the migrating debris. Moreover, Nelson has neither alleged nor offered any evidence of any new governmental action by the County contributing to the debris slide onto Nelson's property after his purchase. Accordingly, Nelson cannot recover under an inverse condemnation claim as a subsequent purchaser. Because the subsequent purchaser rule

precludes recovery on Nelson's inverse condemnation claim, we affirm summary judgment on this claim.

## C.   MOTION TO EXCLUDE

Nelson argues that the trial court abused its discretion in failing to exclude evidence of his own 2008 code violation. We review a trial court's evidentiary rulings for an abuse of discretion. *Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728, 315 P.3d 1143 (2013). "Therefore, we will overturn the trial court's ruling on the admissibility of evidence only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons." *Mutual of Enumclaw Ins. Co.*, 178 Wn. App. at 728. The trial court did not abuse its discretion by failing to exclude evidence of Nelson's 2008 code violation.

Here, the trial court explained that it would not exclude evidence of Nelson's 2008 code violation for having a campfire during a burn ban and for clearing brush within 100 feet of Canyon Creek without appropriate permits because "[i]f indeed we're going to go forward on continuing trespass, that may indeed be relevant as to what your client may have contributed to whatever's going on that he's alleging on his property." RP (Oct. 5, 2012) at 13. Moreover, the trial court indicated that discussion of retaliatory intent could be subject to a motion in limine or that a specific jury instruction could be given in relation to the impact of the code violation. Under these circumstances, the trial court clearly did not abuse its discretion when it refrained from excluding potentially relevant evidence at this early stage in the proceedings.

No. 44240-0-II

In summary, we reverse the trial court's summary judgment dismissal of Nelson's trespass claim; we affirm the trial court's dismissal of Nelson's inverse condemnation claim; and we hold that the trial court did not abuse its discretion in not excluding evidence of Nelson's 2008 code violation at this stage in the proceedings. Accordingly, we remand to the trial court for further proceedings on Nelson's trespass claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Johanson, C.J.

15