[No. 47685-1-II.   Division Two.   October 25, 2016.]

DAVID NICHOLS ET AL., *Appellants*, v. PETERSON NORTHWEST, INC., *Respondent*.

492

*Daniel A. Berner* and *Kevin Hochhalter* (of *Cushman Law Offices PS*), for appellants.

*Richard S. Fallon* (of *Fallon McKinley & Wakefield PLLC*); and *Kevin F. Smith* (of *Law Offices of Sweeney & Deitzler*), for respondent.

¶1   BJORGEN, C.J. — David and Sylvia Nichols appeal the trial court's ruling granting summary judgment in favor of Peterson Northwest Inc. and dismissing their negligence

claim against Peterson. The parties dispute the following issues: (1) whether the Nicholses timely appealed the dismissal of their negligence claim against Peterson, (2) whether the statute of limitations bars the Nicholses' negligence claim, (3) whether the trial court erred in concluding that Peterson did not owe an independent tort duty to the Nicholses for its participation in constructing a new roof on their home, and (4) whether the Nicholses provided evidence to create a genuine issue of material fact as to each element of their negligence claim.

¶2 We hold that (1) the Nicholses timely appealed the trial court's ruling because it was not a final, appealable judgment until after the trial court's decision on the motion for reconsideration, (2) the Nicholses have raised genuine issues of material fact as to whether the discovery rule would toll the statute of limitations and permit their negligence claim, (3) the trial court erred in concluding that Peterson did not owe an independent tort duty to the Nicholses related to its work on the Nicholses' roof, and (4) the Nicholses have raised genuine issues of material fact on their negligence claim as to breach, proximate cause, and damages.

¶3  Accordingly, we reverse and remand.

## FACTS[1]

¶4 In 2001, the Nicholses purchased a residence in Shelton and lived there with their four children. In 2006, the Nicholses noticed a leak in their roof and decided to replace it, contracting with Home Depot to install the new roof. Home Depot hired various subcontractors to perform the work, including Peterson.

¶5 On October 9, 2006, Peterson went to the Nicholses' home and removed the existing roof and shingles. Peterson

---

[1] Because the Nicholses are the nonmoving party, we view the evidence in the light most favorable to them. *Peoples v. Puget Sound's Best Chicken!, Inc.*, 185 Wn. App. 691, 695, 345 P.3d 811 (2015).

also installed flashing, made cuts into the roof peak for ridge vents, and installed felt underneath the shingles. After completing their work, Peterson employees left the roof exposed to the wind and rain. The Nicholses called Home Depot and complained, and the company sent an employee to tarp the roof. Home Depot also removed Peterson from the job. Working with other subcontractors, Home Depot completed the roof's construction.

¶6 On December 7, 2011, David[2] went up to the attic and found white patches of mold and wet wood. The mold posed a health hazard and required the Nicholses to move out of their home. The Nicholses sued Home Depot, Peterson, and other subcontractors that had worked on their roof. The specific claim against Peterson was for negligent performance of work that caused personal injuries, property damage, and loss of use. Vince McClure, the Nicholses' construction defect expert, opined that the improper installation of the roof and water exposure caused the extensive damage and mold growth in their home. Physician statements and medical records suggested that some of the Nicholses' children had suffered various skin infections related to being exposed to the mold as well as mental trauma from disruption in their living situation.

¶7 Home Depot moved for partial summary judgment on the Nicholses' claims. Of relevance to this appeal, Home Depot argued that Washington does not recognize a cause of action for negligent construction and that the Nicholses' negligence claim was barred under the independent duty doctrine. Home Depot also argued that there was no evidence to support special damages for medical expenses as to the Nicholses' children. Peterson joined in Home Depot's motion for partial summary judgment to the extent it was applicable to it. In addition to Home Depot's arguments, Peterson argued that the Nicholses' negligence claim was

---

[2] We refer to David and Sylvia Nichols by their first names to avoid confusion in this opinion. We intend no disrespect.

time barred and that there was no evidence to support the element of proximate cause.

¶8 The trial court granted summary judgment in favor of Home Depot on the Nicholses' negligence claim on the basis that no independent duty existed apart from the contract. Although Peterson had joined in Home Depot's motion for summary judgment on the grounds that it owed no independent duty to the Nicholses, the trial court never directly addressed the issue as it pertained to Peterson. The trial court denied Peterson's summary judgment motion on the issue of proximate cause, "except as otherwise set forth above with relation to defendant [Home Depot]." Report of Proceedings at 56. At this point, it was unclear whether a negligence claim against Peterson still existed.[3] After the summary judgment rulings, Home Depot and the Nicholses settled, and Home Depot is not part of this appeal.

¶9 Peterson moved the trial court for reconsideration, arguing that the only claim left against it was a Consumer Protection Act (CPA)[4] claim, which the Nicholses had failed to establish. The Nicholses contended that they never alleged any CPA claim. At the hearing on reconsideration, Peterson asked the court to dismiss it from the case, since there were no remaining claims against it. The Nicholses objected to dismissing Peterson from the case, arguing that their negligence claim still remained. After hearing argument, the trial court stated that its earlier ruling on the parties' summary judgment motions had dismissed only the negligence claim as to Home Depot. However, the court reconsidered its position and granted the motion for summary judgment in Peterson's favor as it related to negligence.

¶10 The Nicholses appeal.

---

[3] The trial court's written orders on the summary judgment motions provide no further clarification on this matter.

[4] Ch. 19.86 RCW.

## ANALYSIS

### I. STANDARD OF REVIEW

¶11 "We review de novo an order granting summary judgment, performing the same inquiry as the trial court." *Peoples v. Puget Sound's Best Chicken!, Inc.*, 185 Wn. App. 691, 695, 345 P.3d 811 (2015). "A party moving for summary judgment bears the initial burden of showing the absence of an issue of material fact." *Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). "We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence in that party's favor." *Peoples*, 185 Wn. App. at 695. "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file,' along with any affidavits, show that no material issues of fact exist and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting CR 56(c)).

¶12 "We review a trial court's denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *River House Dev., Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 231, 272 P.3d 289 (2012). "A decision is manifestly unreasonable if the trial court takes a view that no reasonable person would take." *Clipse v. Commercial Driver Servs., Inc.*, 189 Wn. App. 776, 787, 358 P.3d 464 (2015), *review denied*, 185 Wn.2d 1017 (2016). "[A] trial court's decision rests on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on unsupported facts." *Id.* If the trial court's decision to grant or deny reconsideration is "contrary to law," the trial court has abused its discretion. *Singleton v. Naegeli Reporting Corp.*, 142 Wn. App. 598, 612, 175 P.3d 594 (2008) (citing CR 59(a)(7)).

II. Reviewability

¶13 Peterson argues that the Nicholses failed to timely appeal the trial court's initial summary judgment ruling, which precludes appellate review. We disagree.

¶14 Generally, a notice of appeal must be filed within 30 days of the entry of a final appealable judgment. RAP 5.2(a); *Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 502, 798 P.2d 808 (1990). The trial court's summary judgment order was dated April 3, 2015, and its order granting reconsideration in favor of Peterson was dated May 11. The Nicholses filed their notice of appeal on June 9. Peterson maintains that because the Nicholses did not appeal the summary judgment order within the 30 day time limit, they are barred from raising any issues pertaining to the summary judgment rulings.

¶15 However, the trial court's summary judgment order was not a final, appealable judgment. In cases involving multiple parties or multiple claims for relief,

> an appeal may be taken from a final judgment that does not dispose of all the claims or counts as to all the parties, but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay. . . . In the absence of the required findings, determination and direction, a judgment that adjudicates less than all the claims or counts, or adjudicates the rights and liabilities of less than all the parties, is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties.

RAP 2.2(d); *see also* CR 54(b).

¶16 Not until the reconsideration stage did the trial court clearly dismiss the negligence claim as to Peterson. Thus, only at that time were all claims adjudicated. Furthermore, the trial court made no determination that there was no just reason for delay, which may have made the

summary judgment order an immediately appealable judgment under RAP 2.2(d). It was not until the trial court's reconsideration order, at which time all claims were resolved, that the 30-day appeal period began. Because the Nicholses timely appealed the trial court's reconsideration decision, Peterson's claim fails.[5]

### III. STATUTE OF LIMITATIONS

¶17 Peterson argues that the statute of limitations bars the Nicholses' negligence claim because they should have discovered the water intrusion within the limitations period. We disagree because the Nicholses raise a genuine issue of material fact as to whether the discovery rule tolls the statute of limitations in this situation.

¶18 "The statute of limitations begins to run when the plaintiff's cause of action accrues." *Mayer v. City of Seattle*, 102 Wn. App. 66, 75, 10 P.3d 408 (2000) (citing RCW 4.16.005). A cause of action accrues when every element of an action is susceptible to proof. *Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 20, 352 P.3d 807, *review denied*, 184 Wn.2d 1015 (2015). In many instances, an action accrues immediately when a wrongful act occurs, but in some circumstances, a plaintiff can be unaware of the harm until a later time. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006). To prevent an injustice in these instances, courts may apply the discovery rule. *Id.*

¶19 Under the discovery rule, a cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the salient facts underlying the cause of action's elements. *Id.* The diligence element of this test raises a question of fact, unless reason-

---

[5] Peterson also argues that "the law of the case" doctrine bars the Nicholses from arguing the validity of their negligence claim against it on appeal. Br. of Resp't at 5-6. However, because this case involves neither a prior appellate decision nor jury instructions, *see Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992), the law of the case doctrine is inapplicable. Accordingly, this argument fails.

able minds could reach but one conclusion. *Burns v. Mc-Clinton*, 135 Wn. App. 285, 300, 143 P.3d 630 (2006).

¶20 Peterson's alleged negligent actions that led to water intrusion occurred in 2006. The Nicholses sued in 2012. Clerk's Papers (CP) at 831. Without tolling the applicable statutes of limitations,[6] the Nicholses' negligence claim against Peterson would be time barred. Peterson contends that the Nicholses should have discovered water intrusion earlier because Sylvia admits that she observed the roof deck being exposed to rain after Peterson failed to tarp the roof. However, Sylvia also states that she did not witness any water intrusion at the time. She believed that Home Depot's tarp over the roof solved any concern about water intrusion. The Nicholses provided evidence that it was not until 2011, when David went into the attic and observed mold, that they noticed any water intrusion. In looking at these facts in the light most favorable to the Nicholses, they have raised a genuine issue of material fact as to whether the exercise of reasonable diligence would have informed them sooner about the water intrusion into their home.

¶21 Accordingly, Peterson's claim based on the statute of limitations fails.

### IV. NEGLIGENCE

¶22 " 'In order to recover on a common law claim of negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.' " *Wuthrich v. King County*, 185 Wn.2d 19, 25, 366 P.3d 926 (2016) (internal quotation marks omitted) (quoting *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013)).

---

[6] Negligence claims for personal injury are subject to a three-year statute of limitations. RCW 4.16.080(2); *Woods View II, LLC*, 188 Wn. App. at 20. Negligence claims for injury to real property are subject to a two-year statute of limitations. RCW 4.16.130; *Wolfe v. Dep't of Transp.*, 173 Wn. App. 302, 306, 293 P.3d 1244 (2013).

¶23 The Nicholses argue that the trial court erred in concluding that Peterson did not owe an independent tort duty for its work on their roof. For the reasons discussed below, we agree that the trial court erred in this determination. Peterson argues separately, however, that we can affirm the trial court because the Nicholses failed to create genuine issues of material fact as to each element of their negligence claim: breach, proximate cause, and damages. We disagree and hold that the Nicholses raised genuine issues of material fact as to each of these elements. Accordingly, the Nicholses have raised genuine issues of material fact to support a legal claim for negligence against Peterson.

## 1. Independent Tort Duty

¶24 The Nicholses argue that the trial court abused its discretion in reconsidering its position and granting summary judgment in favor of Peterson on the basis that it owed no independent tort duty to them. We agree with the Nicholses.

¶25 "The independent duty doctrine, previously known as the economic loss rule, bars recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract." *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc.* 193 Wn. App. 695, 702-03, 376 P.3d 1158 (2016). " 'The test is not simply whether an injury is an economic loss arising from a breach of contract, but rather whether the injury is traceable also to a breach of a tort law duty of care arising independently of the contract.' " *Id.* at 703 (quoting *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 394, 241 P.3d 1256 (2010) (plurality opinion)). We review de novo whether such an independent tort duty exists and, if it does exist, the scope of that duty. *Id.*

¶26 In the context of a defective construction case, there is no independent tort duty to avoid risk of economic loss, "defined as a mere defect in the bargained-

for quality." *Eastwood*, 170 Wn.2d at 395 (citing *Stuart v. Coldwell Banker Commercial Grp., Inc.*, 109 Wn.2d 406, 420, 745 P.2d 1284 (1987)). In *Stuart*, the defendant company built condominiums with decks and walkways that deteriorated in quality because of the weather. 109 Wn.2d at 421. Based on the economic loss rule, the *Stuart* court held, in part, that the plaintiffs were limited to contractual remedies because the damages were only to the decks and walkways themselves. *See id.* at 420-21. In its reasoning, *Stuart* distinguished between damages that are solely economic losses and damages from physical harm or property damage:

> Defects of quality are evidenced by internal deterioration, and designated as economic loss, while loss stemming from defects that cause accidents involving violence or collision with external objects is treated as physical injury.

*Id.* at 420. Citing this distinction in *Stuart*, our Supreme Court stated that a builder has "an independent duty to avoid unreasonable risks of harm to persons and other property." *Eastwood*, 170 Wn.2d at 395.

¶27 This rule was applied in *Jackson v. City of Seattle*, 158 Wn. App. 647, 659-60, 244 P.3d 425 (2010), where Division One of our court held that the plaintiffs had a cause of action for negligent installation of a waterline pipe. The manner in which the pipe had been installed created conditions increasing the risk of landslide. *Id.* at 650-51. A landslide eventually occurred, which damaged the plaintiff's house and landscaping. *Id.* at 651. Citing *Stuart*, the *Jackson* court distinguished between economic losses that would be limited to only the waterline pipe itself and losses related to persons and other property:

> Under *Stuart*, Jackson's loss was not an "economic" loss. An economic loss is a defect of quality as evidenced by internal deterioration. But when a loss stems "from defects that cause accidents involving violence or collision with external objects," that is a physical injury susceptible of a tort remedy. *Stuart*,

109 Wn.2d at 420. If the new waterline had not functioned properly and had to be reinstalled or fixed, that would be an economic loss. But the waterline itself worked as anticipated. Jackson's loss was damage to his house and landscaping, caused by the violent occurrence of the landslide—an event allegedly precipitated by the defective condition in which the contractors left the hillside.

*Id.* at 659-60 (footnote omitted).

¶28 In the present case, the Nicholses alleged that Peterson's failure to lay a tarp and its involvement in constructing the roof led to water intrusion into their home, causing water damage and mold in parts of the home that Peterson did not work on. The mold's toxicity allegedly caused personal injuries to the Nicholses' children. The Nicholses do not seek relief in tort for the defective construction of the roof itself; rather, they seek such relief because Peterson's actions ostensibly caused property and personal injuries beyond the scope of the economic losses associated with the roof itself. Under the case law above, Peterson owed an independent duty to avoid these unreasonable risks of harm to persons and other property. *Eastwood*, 170 Wn.2d at 395; *Stuart*, 109 Wn.2d at 420.

¶29 Peterson argues that the Nicholses' claim should be limited to its contract with Home Depot, or alternatively, that its contract with Home Depot absolves them from an independent tort duty toward the Nicholses. This argument fails. The risks related to economic losses from the roof construction itself were allocated by the contracts between the Nicholses and Home Depot as well as between Home Depot and Peterson. If the Nicholses alleged harms limited to, for example, only the aesthetic characteristics or quality of the roof, Peterson would be correct that the Nicholses have only a contractual remedy. The Nicholses cannot be limited to contractual remedies, though, when a roof's construction creates a risk of harm to other real property or personal injury. *Stuart*, 109 Wn.2d at 420; *see also Pointe at Westport Harbor*, 193 Wn. App. at 704-05.

Like the defendants in *Jackson*, Peterson owed a separate duty to avoid unreasonable risks of harm to persons and other property when it worked on the roof. Accordingly, the trial court erred in concluding that Peterson owed no such duty.

## 2. Breach

¶30 Peterson argues that even if it had a duty to avoid unreasonable risks of harm to persons and other property, the Nicholses failed to provide "substantial evidence" that Peterson violated this duty. We disagree.

¶31 First, we are not required to find substantial evidence of a breach of duty; rather, on summary judgment, we examine whether, given the applicable law, the Nicholses have provided evidence to raise genuine issues of material fact. CR 56(c). In looking at the evidence in the light most favorable to the Nicholses, Sylvia stated that she witnessed Peterson install "the wrong flashing [and] repeatedly made incorrect cuts" in their roof. CP at 453. She also observed that Peterson "left the roof exposed to rain and wind." CP at 453. McClure, the Nicholses' construction expert, opined that the failure to protect the roof and the roof's improper construction led to water intrusion into the home. Physician statements and medical records show that the mold injured the Nicholses' children. The Nicholses' evidence raises a genuine issue of material fact as to whether Peterson breached its duty.

¶32 Peterson contends that Sylvia's declaration is the only evidence that Peterson was involved in the construction of the roof and that it is insufficient to raise a genuine issue of fact as to whether Peterson worked on it. However, other evidence supports Sylvia's observations. For example, Peterson's work order for the Nicholses' home contains orders for shingles, flashing, and soffit vents. Peterson is correct that its bill to Home Depot might provide some evidence to the contrary. With conflicting evidence, though, the fact finder must decide and resolve whether Peterson

was involved in constructing the Nicholses' roof. Thus, Peterson's claim fails because the Nicholses have created a genuine issue of material fact as to whether Peterson breached its duty.

### 3. Proximate Cause

¶33 Peterson contends that even if it breached its duty to the Nicholses, they failed to create a genuine issue of material fact as to whether its negligence proximately caused damage to the home. We disagree.

¶34 "Proximate cause has two elements: cause in fact and legal causation." *McCarthy v. Clark County*, 193 Wn. App. 314, 329, 376 P.3d 1127 (2016). "Cause in fact exists when 'but for' the defendant's actions, the claimant would not have been injured." *Id.* Cause in fact generally is a factual question for the jury. *Id.* However, cause in fact may be decided as a matter of law if the facts and inferences from them are plain and not subject to reasonable doubt or difference of opinion. *Martini v. Post*, 178 Wn. App. 153, 164-65, 313 P.3d 473 (2013).

¶35 The Nicholses' evidence creates a genuine issue of material fact on the issue of proximate cause. Sylvia's declaration claims that she witnessed Peterson fail to tarp their roof as well as improperly install roof flashing. McClure opined that water intrusion in the home, referencing both the failure to properly protect the roof and improper installation of flashing, caused extensive damage to their home. Sylvia's declaration and McClure's expert opinion raise a genuine issue of fact as to whether but for some of Peterson's actions and/or omissions, the Nicholses' home would not have suffered water damage.

¶36 Peterson argues that Sylvia's declaration contradicts her earlier deposition, making the evidence insufficient to raise a genuine issue of material fact on the issue of proximate cause. Specifically, Peterson points to the following exchange in Sylvia's deposition:

Question: Okay. And did the tarping over the roof solve your concern?

Sylvia: At the time, yes, because I didn't see any intrusion into the house.

Question: . . . [S]o is it correct, there was no water intrusion into the house due to the roof not being tarped?

Sylvia: Not that we know of. We didn't witness it.

CP at 693.

¶37 This portion of Sylvia's deposition does not contradict her later declaration. Sylvia's declaration states that the roof was exposed to rain—not that she also saw water intrusion into the home. Furthermore, a "later declaration should be considered in light of other evidence presented in the case to determine whether sufficient evidence raises a factual issue." *State Farm Mut. Auto. Ins. Co. v. Treciak*, 117 Wn. App. 402, 408, 71 P.3d 703 (2003). Even if Sylvia's deposition were somewhat contradictory to her declaration, McClure pointed to the roof's exposure to rain as part of the reason for the water intrusion. Examining this evidence in the light most favorable to the Nicholses, their evidence creates a genuine issue of material fact whether the failure to protect the roof caused water intrusion into the home.

¶38 Peterson also argues that there is no evidence that its involvement in the construction contributed to the water intrusion into the Nicholses' home. McClure opines, though, that the improper installation of flashing, which Peterson is alleged to have helped install, contributed to the water intrusion. Like the claim for failure to tarp, it will be a question for the fact finder whether Peterson's contribution to the construction process proximately caused the harm that the Nicholses suffered.

¶39 Accordingly, the Nicholses have raised a genuine issue of material fact as to whether Peterson's actions and/or omissions proximately caused the water intrusion into their home.

### 4. Damages

¶40 Peterson argues that the Nicholses have failed to provide evidence that creates a genuine issue of material fact on damages. We disagree.

¶41 The only issue related to damages raised to the trial court concerned special damages for medical expenses incurred for treatment of the Nicholses' children. At the summary judgment stage, Home Depot and Peterson did not dispute damages related to the Nicholses' home. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. In addressing only whether there is evidence to support special damages for medical expenses, the Nicholses have created a genuine issue of material fact. They provided evidence that their children suffered personal injuries caused by the mold growth and mental anguish related to the disruption of having to move out of their home.

¶42 Peterson argues that even if there is evidence of damages, the Nicholses will receive a double recovery because Home Depot settled for the same claims the Nicholses are alleging against Peterson. However, this issue was not brought before the trial court, and we decline to address it on review of summary judgment. *Id.* While it is true that Home Depot and the Nicholses settled only after the trial court's initial summary judgment rulings, Peterson was aware of the settlement and had an opportunity to raise the double recovery issue when it moved for reconsideration. *See* CR 59(a)(4), (7).

¶43 Accordingly, Peterson's claims related to damages fail.

## CONCLUSION

¶44 We hold that (1) the Nicholses timely appealed the trial court's ruling because a final, appealable judgment was

reached only with the trial court's reconsideration decision, (2) the Nicholses have created a genuine issue of material fact as to whether the discovery rule would toll the statute of limitations and permit their negligence claim, (3) the trial court erred in concluding that Peterson did not owe an independent tort duty to the Nicholses for its participation in constructing a new roof on their home, and (4) the Nicholses have raised genuine issues of material fact on their negligence claim as to breach, proximate cause, and damages. Accordingly, we reverse the trial court and remand for proceedings consistent with this opinion.

JOHANSON and MAXA, JJ., concur.

Reconsideration denied January 5, 2017.