[No. 18284-3-III. Division Three. August 17, 2000.]

PAUL GIRAUD, ET AL., *Appellants*, v. QUINCY FARM AND CHEMICAL, *Respondent*.

444

*Carl H. Hagens* (of *Hagens Berman, L.L.P.*), for appellants.

*Michael R. Tabler* and *Nicholas L. Wallace* (of *Schultheis & Tabler*), for respondent.

KURTZ, C.J. — In the spring of 1994, Paul Giraud, Sr., applied a herbicide to his potato crops. Immediately after the crops were sprayed, Mr. Giraud observed that the plants appeared damaged. He consulted with the representative of Quincy Farm and Chemical, who selected and supervised the application of the herbicide, and a representative of the company that manufactured the herbicide. According to Mr. Giraud, he was told that the damage to the potato crops was cosmetic and temporary, and that it should not affect his yield. When Mr. Giraud harvested his potato crops in the fall of 1994, he discovered substantial damage.

In July 1998, the Girauds learned that the application of the herbicide to their potato crops was inconsistent with the instructions on the herbicide's label. In September 1998, the Girauds received court permission to file an amended

complaint in which they asserted causes of action alleging negligence and breach of warranty against Quincy Farm. Quincy Farm moved for summary judgment, contending that the claims were barred by the three-year negligence statute of limitations and the four-year warranty statute of limitations. The court granted the motion, and the Girauds appeal, contending that the discovery rule tolled the negligence statute of limitations and that the doctrine of fraudulent concealment tolled the warranty statute of limitations.

We conclude that the negligence statute of limitations was tolled by the discovery rule until the crops were harvested. Because the Girauds brought their negligence claim more than four years after they harvested the crops, we affirm the superior court's dismissal of the negligence cause of action. We further conclude that the doctrine of fraudulent concealment did not toll the warranty statute of limitations beyond July 1994 because the Girauds failed to use reasonable diligence in discovering the information they allege Quincy Farm withheld from them. Consequently, we affirm the superior court's dismissal of the breach of warranty cause of action.

## FACTS

Paul Giraud, Sr., is an experienced potato farmer. In 1994, he planted three fields of potatoes, referred to as the Royal City, Hiri and Mattawa fields. After he planted his potato crops, he consulted John Biersner of Quincy Farm and Chemical regarding weed control for his potato crops. After these consultations, Mr. Giraud purchased a herbicide known as Prowl from Quincy Farm in late May 1994.

Mr. Giraud relied upon Mr. Biersner not only in selecting the herbicide but also in applying it to his fields. At Mr. Giraud's request, Mr. Biersner calibrated the sprinkler system, mixed the herbicide and applied the herbicide on the potato fields. Mr. Giraud's field hand monitored the Prowl application according to Mr. Biersner's instructions.

Prowl is manufactured by American Cyanamide. On the

Prowl label, the manufacturer specifically cautions that the herbicide should not be applied to potato plants that are more than six inches tall. Based upon his prior experience with Prowl, Mr. Biersner applied the herbicide to Mr. Giraud's fields even though the potato plants were approximately eight to ten inches tall. According to Mr. Giraud, Mr. Biersner did not disclose to him the information that the application of Prowl to Mr. Giraud's potato fields was inconsistent with the manufacturer's instructions.

Within a day of the application, Mr. Giraud observed that many of the plants at the Mattawa field had become brittle and that the stems on some of these plants had broken. He noticed the same problem to a lesser degree at the Hiri fields. Shortly thereafter, Mr. Giraud contacted Mr. Biersner to express his concern that the Prowl application had caused damage to his fields. The two men met and inspected the Mattawa field. Later, in his deposition, Mr. Biersner testified that his inspection of the field revealed that there was a problem, which he characterized as "very unusual"; he further testified that he did not know the cause of the problem.

After this inspection, Mr. Biersner called a representative of American Cyanamide, Fred Watari, and asked him to respond to Mr. Giraud's concerns about the Prowl application. In July, Mr. Watari and Mr. Biersner met with Mr. Giraud and examined Mr. Giraud's potato crops. According to Mr. Biersner, Mr. Watari said that the Prowl application, combined with the high winds, had caused some damage to the plants, but that the damage was "cosmetic" in nature. He also said that the yield would not be adversely affected.

At this point, Mr. Giraud was uncertain as to the condition of his potato crops. In addition to the herbicide, he had applied fertilizer to the potato crops. Mr. Giraud testified in his deposition that he was "not sure what caused the problem. I was informed that the Prowl didn't cause me any problem as far as [the] quality of my potatoes. . . . There was several products put on and I'm not sure which one [caused the problem]. Everyone that—I was told that none of the products was capable of doing this to my potatoes."

In the months following the herbicide application, the potato fields regained most of their foilage and appeared to recover. Mr. Giraud began harvesting in late September and early October. The Royal City field was harvested first, and the crop appeared fine. The Hiri field was harvested next in mid- to late-October, and the potatoes were undersized. Near the end of October, Mr. Giraud dug three test loads of potatoes in the Mattawa field. The test loads revealed rough, misshapen and undersized potatoes that were unsuitable for the fresh market. The field was thereafter harvested, and the harvest yielded small and misshapen potatoes. The potatoes from all three fields were stored together in a warehouse. In May 1995, the Hiri field potatoes began rotting and ruined most of the crops with which they were stored.

Initially, the Girauds attributed the failure of their potato crops to the application of "adulterated" fertilizer. On October 20, 1997, the Girauds filed a lawsuit against Quincy Farm entitled "Class Action Complaint for Adulterated, Misbranded, Defective, Unmerchantable Sales of Commercial Fertilizer." During the course of that lawsuit, the Girauds hired a weed science expert, who investigated their claims against Quincy Farm and who concluded that the cause of the damage to the Girauds's potato crops was the application of Prowl to potato plants that were more than six inches tall. As a result of this development, in September 1998 the Girauds requested and received court permission to file an amended complaint. In the amended complaint, the Girauds allege negligence and breach of warranty claims against Quincy Farm. The Girauds concede that the amended complaint does not relate back to the original complaint because it alleges new causes of action.

Quincy Farm moved for summary judgment on the basis that the Girauds's claims were barred by the statute of limitations. The court granted the motion in a memorandum decision. The court concluded that in July 1994, Mr. Giraud realized his crop was bad due to something Quincy

Farm did. As a result of this knowledge, the court ruled that the three- and four-year statutes of limitations for negligence and warranty claims, respectively, began to run as of July 1994, more than four years before the amended complaint was filed.

The Girauds appeal.

## ANALYSIS

When reviewing an order for summary judgment, we engage in the same inquiry as the trial court, and will affirm if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Wilson Court Ltd. Partnership v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). All facts and reasonable inferences must be considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Id.*

Is the Girauds's negligence claim barred by the statute of limitations?

 The statute of limitations for the negligence action is three years. RCW 4.16.080(2). A limitation period begins to run when the plaintiff's cause of action accrues. *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996). Usually, a cause of action accrues when the plaintiff suffers injury or damage. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992).

When a delay occurs between an injury and the plaintiff's discovery of it, the court may apply the discovery rule, provided the delay was not caused by the plaintiff sleeping on his rights. *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163 (1997). The discovery rule operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim. *Id.*; *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). To invoke the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier. *G.W. Constr. Corp. v. Professional*

*Serv. Indus. Inc.*, 70 Wn. App. 360, 367, 853 P.2d 484 (1993). Unless the facts are susceptible of only one reasonable interpretation, it is up to the jury to determine whether the plaintiff has met this burden. *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995).

■ ■ This case falls within the ambit of the discovery rule. First, given the nature of the crop, Mr. Giraud could not know the extent of the damage, or even if damage was being incurred, until the potatoes were dug from the ground. While Mr. Giraud admits he recognized the plants appeared damaged after application of the Prowl, he further stated it was impossible to discern if any damage had been done because the potatoes were in the ground and in the early stage of their development. In his deposition, Mr. Biersner made a similar statement. Moreover, at that time, the representative from American Cyanamide assured Mr. Giraud that the damage was cosmetic and temporary. Regarding his state of knowledge in July and August, Mr. Giraud testified "Well, I wasn't—didn't know if I had any damage or not. I was assured that I was going to still be all right through the harvest."

The Girauds contend that the discovery rule tolled the statute of limitations through harvest, through the filing of their lawsuit in October 1997, and until they were advised by their expert in July 1998 that Mr. Biersner had failed to follow the label instructions for the application of Prowl. They further argue that, in granting summary judgment, the court improperly concluded that they failed to exercise due diligence in discovering the elements of their claim.

"The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered." *Green v. A.P.C.*, 136 Wn.2d 87, 96, 960 P.2d 912 (1998). Stated more succinctly, the law does not require a smoking gun in order for the statute of limitations to commence. *Beard v. King County*, 76 Wn. App. 863, 868,

889 P.2d 501 (1995). A prospective plaintiff who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken. *Id*. Reasonable minds could not differ as to whether the Girauds should have suspected that they had a claim against Quincy Farm after the harvest of their potato crop.

Considered in the light most favorable to the Girauds, the evidence submitted on summary judgment creates unresolved issues of material fact regarding whether, until October 1994, the Girauds knew they were injured and, therefore, had a cause of action. After that date, the only reasonable interpretation of the facts is that the Girauds should have suspected they had a claim against Quincy Farm. The Girauds' received court permission to file an amended complaint in September 1998. Because the Girauds's negligence claim against Quincy Farm was filed more than three years after October 1994, it is barred by RCW 4.16.080(2).

Is the Girauds's warranty claim barred by RCW 62A.2-725?

■ The statute of limitations for the warranty claim is four years. RCW 62A.2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." RCW 62A.2-725(2). Significantly, the warranty statute of limitations normally commences to run when the product is purchased, even though the buyer does not know that the product is defective. 1 James J. White & Robert S. Summers, Uniform Commercial Code § 11-9 (4th ed. 1995).

There are two circumstances identified in the warranty statute of limitations that extend the limitation period beyond four years from the purchase date. First, if there is a warranty promising future performance of the product,

the limitation period is extended until discovery of the breach. Second, RCW 62A.2-725 specifically provides that the statute does not alter the law on the tolling of the statute of limitations. RCW 62A.2-725(4). Absent these circumstances, the statute of limitations for the Girauds's warranty action began to run May 1994 when they purchased the herbicide.

The Girauds do not contend that Quincy Farm explicitly warranted the future performance of Prowl. Rather, the Girauds contend that the warranty statute of limitations was tolled by the *doctrine of fraudulent concealment.* Specifically, the Girauds allege that Quincy Farm knew that Prowl was applied to the Girauds's potato fields in a manner that was inconsistent with the label instructions and fraudulently concealed this information from the Girauds. This conduct, they maintain, tolled the commencement of RCW 62A.2-725(1) until they discovered the information in July 1998.

■ At common law, fraudulent concealment of a cause of action tolls the statute of limitations. *McMaster v. Farmer*, 76 Wn. App. 464, 469, 886 P.2d 240 (1994), *overruled on other grounds by Freitag v. McGhie*, 133 Wn.2d 816, 947 P.2d 1186 (1997). In order to establish fraudulent concealment, the plaintiff must show that he or she was ignorant of the defect and the plaintiff must further show that the defendant engaged in some conduct of an affirmative nature designed to prevent the plaintiff from becoming aware of the defect. *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 237 (8th Cir. 1996), *aff'd*, 521 U.S. 179, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997); *Crisman*, 85 Wn. App. at 20-23. Absent a special relationship between the parties, the defendant's failure to disclose the existence of the defect to the plaintiff is insufficient. It has been said that the affirmative act of concealment requires "actual subjective knowledge by the defendants of the wrong done, *i.e.* scienter, and some affirmative action on his part in concealing the wrong." *Taylor v. Wilmington Med. Ctr., Inc.*, 538 F. Supp. 339, 342 (D. Del. 1982).

If there is a special relationship between the parties, such that the law imposes an affirmative duty to disclose material information, silence may be sufficient to establish fraudulent concealment. *Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625, 393 P.2d 287 (1964) (citing *Oates v. Taylor*, 31 Wn.2d 898, 902-03, 199 P.2d 924 (1948)). A duty to disclose material facts exists for a person who, in the course of business, supplies information for the guidance of others in their business transactions. *Burien Motors, Inc. v. Balch*, 9 Wn. App. 573, 577, 513 P.2d 582 (1973) (citing RESTATEMENT OF TORTS § 552, cmts. c, d, e (1938)). The Girauds contend that their reliance upon Mr. Biersner for his guidance in selecting and applying Prowl created a special relationship and, therefore, he had an affirmative duty to disclose that he misapplied the herbicide.

Before we can address the merits of the Girauds's fraudulent concealment contention, we must decide whether the doctrine of fraudulent concealment applies to the warranty statute of limitations. Quincy Farm argues that fraudulent concealment is a specie of the discovery rule and, like the discovery rule, it does not toll the warranty statute of limitations. *See Hagen v. Richardson-Merrell, Inc.*, 697 F. Supp. 334, 341 (N.D. Ill. 1988); *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 177-78 (Del. Super. Ct. 1986) (citing 54 C.J.S. *Limitation of Actions* § 206, pp. 226-28 (1948); 51 AM. JUR. 2D *Limitation of Actions* § 149 (1970)); *North Coast Enters., Inc. v. Factoria Partnership*, 94 Wn. App. 855, 859-60, 974 P.2d 1257, *review denied*, 138 Wn.2d 1022 (1999).

When applicable, the discovery rule limits the harshness of statutes of limitation. *Gunnier v. Yakima Heart Ctr., Inc., P.S.*, 134 Wn.2d 854, 860, 953 P.2d 1162 (1998). But the cost of that liberality is uncertainty. The statutory period may have run, but a cause of action may still be viable because the plaintiff has not yet discovered the injury or its cause. Because such uncertainty is unsuitable for the marketplace, the warranty statute of limitations makes it clear that the discovery rule does not apply to warranty lawsuits.

*H. Sand & Co. v. Airtemp Corp.*, 738 F. Supp. 760, 770 (S.D.N.Y. 1990), *aff'd in part, rev'd in part by* 934 F.2d 450 (2d Cir. 1991); *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1265-66 (D. Del. 1983). Its commencement date—tender of delivery—is readily marked and completely unrelated to defect or injury. The statute pointedly eliminates consideration of the plaintiff's knowledge. Quincy Farm notes that the doctrine of fraudulent concealment, like the discovery rule, focuses on defect or injury and the plaintiff's knowledge. Because these matters are irrelevant to the operation of the warranty statute of limitations, Quincy Farm argues that the doctrine of fraudulent concealment should not toll the warranty statute of limitations.

We do not accept Quincy Farm's analysis. The discovery rule and the doctrine of fraudulent concealment apply to related but distinct legal problems. The former deals with injuries and causes that are inherently difficult to detect, while the latter concerns affirmative conduct that is designed to conceal a cause of action. It makes sense for the law to treat these distinct legal problems differently.

In this respect, we believe that the warranty statute of limitations is analogous to the medical malpractice statute of limitations, RCW 4.16.350(3). That statute was amended in 1971 and again in 1976 in order to limit the impact of the discovery rule upon the statute. *Gunnier*, 134 Wn.2d at 859-62. In its current form, the medical malpractice statute of limitations allows plaintiffs to file suit three years after the last negligent act or one year after discovery of the negligence," whichever period expires later." RCW 4.16.350(3); *Caughell v. Group Health Coop.*, 124 Wn.2d 217, 237 n.6, 876 P.2d 898 (1994). Although the statute severely limits the application of the discovery rule to medical malpractice actions, the statute remains subject to the following tolling provision: "PROVIDED, That the time for commencement of an action is tolled upon proof of fraud, intentional concealment . . . ." RCW 4.16.350(3).

▮ In amending RCW 4.16.350, the Legislature distin-

guished between the discovery rule and fraudulent conceal-
ment and treated them differently. Likewise, RCW 62A.2-
-725(4) provides that the statute does not alter the law on
the tolling of the statute of limitations. Although the
language of RCW 62A.2-725 purposefully makes the discov-
ery rule inapplicable to warranty causes of action, it im-
poses no such limitation on the doctrine of fraudulent
concealment. We decide the doctrine of fraudulent conceal-
ment applies to RCW 62A.2-725.

Next, we address the issue of whether Quincy Farm's
failure to disclose to the Girauds the information that Prowl
was applied to their potato plants in a manner that was
inconsistent with its label instructions tolled the warranty
statute of limitations until the Girauds discovered the
information. In order to toll the statute of limitations, the
Girauds must do more than merely establish that Quincy
Farm concealed this information. They must also show that
they were personally unaware of this information. Fraudu-
lent concealment cannot exist if a plaintiff has knowledge of
the evidence of an alleged defect. *Hydra-Mac, Inc. v. Onan
Corp.*, 450 N.W.2d 913, 918-19 (Minn. 1990). Additionally,
they are required to demonstrate that they were reasonably
diligent in their efforts to discover the information that they
allege Quincy Farm withheld from them. *Marvin Lumber &
Cedar Co. v. PPG Indus., Inc.*, 34 F. Supp. 2d 738, 754 (D.
Minn. 1999); *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691,
697-98 (Ind. Ct. App. 1987).

The Girauds contend that Quincy Farm concealed from
them the fact that Prowl was applied to their potato plants
at a time when the potato plants were greater than six
inches tall and that this application was contrary to the
label instructions for the herbicide. Prowl was applied to
the Girauds's potato fields by their employees. It follows
that Quincy Farm could not conceal from the Girauds the
size of the potato plants at the time of the herbicide
application. The Girauds also had access to the information
on the Prowl label. It cannot be said that the information
contained on the label was concealed from the Girauds.

Even if we accept the Girauds's argument that there was a special relationship between Mr. Biersner and the Girauds such that he had an affirmative duty to disclose to them the possible problem with the Prowl application, we cannot accept their argument that they had no duty to protect their own interests by familiarizing themselves with the Prowl label. In the spring and early summer of 1994, the Girauds were sufficiently concerned about the Prowl application that they met not only with a representative of Quincy Farm, but later with a representative of American Cyanamide. By this time, reasonable diligence would have required them to familiarize themselves with the chemical and how it should have been applied to their crops. Because the breach of warranty cause of action was brought more than four years after July 1994, we decide as a matter of law that the cause of action is barred by RCW 62A.2-725.

The judgment of the superior court is affirmed.

SCHULTHEIS and BROWN, JJ., concur.

Reconsideration denied October 4, 2000.

Review denied at 143 Wn.2d 1005 (2001).