IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL C. DARLAND and MYRNA DARLAND, husband and wife, et al, | ) ) ) | No. 36002-4-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SNOQUALMIE PASS UTILITY DISTRICT, a Washington municipal corporation, | ) ) ) ) | |
| Respondent. | ) | |

FEARING, J. — In a previous appeal, we affirmed the trial court's dismissal of

Michael and Myrna Darland's cause of action against the Snoqualmie Pass Utility

District for reimbursement of assessments paid for utility local improvement districts.

We now reverse the superior court's dismissal, based on the statute of limitations, of the

Darlands' remaining causes of action. We, however, dismiss two other claims on the

merits as a matter of law.

No. 36002-4-III
*Darland v. Snoqualmie Pass Utility District*

FACTS

This lawsuit concerns extension of water and sewer services to a seventy-six acre tract of land. We call the tract of land SnoCadia. The property sits east of Snoqualmie Pass in Upper Kittitas County. Plaintiffs Michael and Myrna Darland are current owners of SnoCadia and wish to develop the land for residences. Defendant Snoqualmie Pass Utility District, the local water-sewer district, assessed the property for water and sewer services.

We repeat some facts, beginning in the 1970s, from our earlier opinion. On August 3, 1977, Count Michael Graf Von Holnstein purchased SnoCadia. In 1978, Kittitas County approved a planned unit development on Von Holnstein's land. As a result of county approval, Kittitas County Sewer District No. 1, a predecessor of Snoqualmie Pass Utility District, included SnoCadia in its service area when finalizing the district's comprehensive plan.

To construct public water system improvements, sewer-water districts may form utility local improvement districts (ULIDs). A sewer-water district forms the ULID to finance improvements that benefit a limited number of properties. After forming the ULID, the utility district sells revenue bonds to pay for the improvements, and the owners of the properties within the ULID pay assessments for the purpose of retiring the revenue bonds. RCW 57.16.050.

On May 19, 1982, Kittitas County Sewer District No. 1 Board of Commissioners

2

adopted resolution number 82-3, which approved an assessment for Utility Local Improvement District No. 4 for purposes of sewer facilities. The resolution provided:

> Each of the lots, tracts, parcels of land and other property shown on the assessment roll is declared to be specially benefited by the proposed improvement in at least the amount charged against the same.

Clerk's Papers (CP) at 229. The resolution also declared:

> [A]ll future connections within Utility Local Improvement District No. 4 will be subject to a connection charge or ready-to-serve fee of $1,275.00 each, but the property owner will be entitled to a credit of one such connection charge for each $1,275.00 of assessment against that property up to the full amount of that assessment.

CP at 229. ULID No. 4 assessed $48,917.25 against 72.47 acres of Michael Von Holnstein's property. Apparently the ULID did not benefit all SnoCadia.

Kittitas County Sewer District No. 1 changed its name to Snoqualmie Pass Sewer District of King and Kittitas Counties sometime between May 19, 1982, and July 25, 1986. On July 25, 1986, Snoqualmie Pass Sewer District Superintendent Richard Kloss penned a letter to Snoqualmie Pass landowners, including Michael Von Holnstein. The letter addressed a proposed water system and read, in part:

> SUBJECT: Pass-wide Water System
> The following is in response to several questions asked about the proposed pass-wide water system:
> 1. Financing will be accomplished by the formation of a Utility Local Improvement District (ULID). The bonds would be issued at approximately 8 1/2 percent (today's rate) payable over a 15 year period.
> The preliminary cost per acre is $ 1,425.00 and lots under 1 acre would be $ 475.00 per lot. This method of payment allows all land over 1 acre to be guaranteed 3 residential equivalent hookups (1200 gpd). Lots

under 1 acre would be entitled to 1 residential equivalent hookup.

The monthly payment based on a current 8 1/2 percent interest rate for 15 years would be $14.03 per month per acre, and $4.68 for lots under 1 acre.

CP at 26. Superintendent Kloss' letter referred to proposed ULID No. 7.

On December 10, 1986, the Snoqualmie Pass Sewer District Board of Commissioners convened a regular meeting. The board of commissioners discussed water and sewer hookups. The minutes of the meeting read in part:

The Board of Commissioners stated that this does not include any distribution system for water and that it only runs the water mains by the property making water available to them, this is also true for sewer.

CP at 34. Later records also suggest not only a commitment to grant customers hookups, but also a commitment by the utility district to extend sewer and water mains to utility customers' respective properties, a promise contrary to utility industry customs.

On April 8, 1987, the Snoqualmie Pass Sewer District Board of Commissioners convened a regular meeting, during which the board discussed ULID No. 7. Minutes of the April 8 meeting include this entry:

Commissioner [Stan] DeBruler read the letter of protest from Mr. Von Holstein aloud to the [b]oard members. Von Holstein's property is 76 acres, abuts Mt. Grandeur. Mr. Von Holstein wants out because he has no legal access because of easements. Supt. Kloss explained to the [b]oard members the adjoining property owners and the neighboring easement problems. Easement possibilities were discussed by the [b]oard and it was suggested that a response to Mr. Von Holstein be made as soon as possible.

CP at 142.

On June 24, 1987, the Snoqualmie Pass Sewer District held a public hearing on the final assessment roll for ULID No. 7. During this June 24 public hearing, a representative of Michael Von Holnstein read a letter from Von Holnstein that expressed dismay over assessments on his property with no development potential. The letter claimed SnoCadia could not be developed because it lacked a sixty-foot right of way for access as required by the county. After the reading of the letter, the following dialogue transpired:

> PRES. CRAVEN: Is there any other person that would like to address the Board relative to their property?
> JOHN HIGHT: I have a question. With a piece of property big enough to split and divide into another lot, will I have to pay the $710 two times?
> PRES. CRAVEN: You will have to pay another $710.
> SUPT. KLOSS: Property under one acre is entitled to one hookup and for anything above that you have to pay a hookup fee—710 is prepaying that hookup.
> SEC. DEBRULER: These are guaranteed hookups. We are guaranteeing you water. This ULID # 7 is bringing water in trunk line past your property.

CP at 39.

On July 31, 1987, Snoqualmie Pass Sewer District Superintendent Richard Kloss sent notice to all district customers that the district would proceed with ULID No. 7 construction. The notice further declared:

> The District will only be responsible for the water mains and the line from the main to the property line. The water service line is the responsibility of the homeowner or business.

5

CP at 33.

In 1989, Louis Leclezio approached Michael Von Holnstein about purchasing SnoCadia. To that end, Leclezio formed a joint venture investment group named Miller Shingle Company. At the time Louis Leclezio negotiated a purchase of the acreage, he knew that the land sat within the Snoqualmie Pass Sewer District boundaries and that the property was subject to ULID Nos. 4 and 7. Leclezio further knew that Michael Von Holnstein had defaulted on the ULID assessments and the assessments had accrued penalties and interest. Finally, Leclezio knew that the sewer district had threatened to foreclose on the land unless Count Von Holnstein paid amounts owed.

Before Miller Shingle Company purchased SnoCadia, Louis Leclezio viewed the land and reviewed records at the Snoqualmie Pass Sewer District and at Kittitas County. Leclezio met with sewer district superintendent Richard Kloss. Leclezio wanted to confirm the availability of water and sewer for the land and its potential for rezoning to commercial use. Due to penalties and interest, the amount owed by Von Holnstein to the district substantially exceeded the property purchase price, and so Leclezio sought to measure the potential gain from payment of the assessments.

According to Louis Leclezio, during a meeting with Snoqualmie Pass Sewer District Superintendent Kloss, Kloss showed Leclezio a hookup status ledger maintained by the district. The ledger disclosed that the sewer district owed Michael Von Holnstein's property two hundred and thirty water hookups and thirty-eight sewer

6

hookups.  Kloss also represented to Leclezio that the district guaranteed the hookups to the land.  Finally, Kloss represented to Leclezio that the sewer district guaranteed delivery of the water and sewer lines to the boundary of each tax parcel of property within the district.  Thus, Leclezio concluded that, on payment of the assessments, penalties, and interest accrued on SnoCadia, the district would provide the property a minimum of two hundred and thirty water hookups and thirty-eight sewer hookups and the sewer district would, at its cost, run the sewer and water mains from the district's then existing termini to at least the boundaries of SnoCadia.  According to Leclezio, the district's guarantees induced him to purchase SnoCadia from Michael Von Holnstein and to pay all assessments, penalties, and interest owed to the district on closing of the purchase.

Michael Von Holnstein transferred SnoCadia's 76.8 acres of land to Miller Shingle Company on June 1, 1989.  The company paid the purchase price to Von Holnstein and $492,781.44 to Snoqualmie Pass Sewer District for ULID Nos. 4 and 7 assessments, interest, and penalties.  On September 12, 1989, the Board of Kittitas County Commissioners approved Louis Leclezio's request to rezone SnoCadia from forest and range land to commercial land.

At some date between 1989 and January 30, 1998, the Snoqualmie Pass Sewer District changed its name to Snoqualmie Pass Utility District, the name of the defendant in this suit.  In January 1998, Louis Leclezio commenced preparations for the marketing

7

and sale of the property. He sought confirmation from the Snoqualmie Pass Utility

District as to the number of water and sewer hookups available to the property. In

response to the inquiry, the utility district faxed a copy of a one page document headlined

"Hookup Status." CP at 145. The document continued to show the acreage would

receive two hundred and thirty unused water hookups and thirty-eight unused sewer

hookups.

On August 11, 1999, the board of commissioners of the Snoqualmie Pass Utility

District convened. Meeting minutes from August 11 portend a water shortage within the

district. The minutes read, in part:

> SYSTEM CONNECTION CHARGES
> Supt. Kloss distributed copies of a draft resolution from Foster
> Pepper & Shefelman to rescind pre-paid hookups as was discussed at our
> last meeting. After a lengthy discussion the Board agreed to research this
> matter further and see what other alternatives might be available. In the
> meantime we need to put together a plan before any action can be taken.
> Supt. Lenihan stated that our water rights issue is the biggest
> problem. With our current water rights we cannot honor the water
> hookups. He also reported that our wells are not reliable and the plan
> should include for the cost to put in a new well and additional storage.

CP at 45.

In March 2001, the Snoqualmie Pass Utility District adopted a temporary

moratorium on the issuance of new certificates of water availability. The utility district

then acknowledged nearly exhausting its available water rights.

In June 2001, Louis Leclezio received an offer from an unidentified purchaser to

purchase SnoCadia for $6 million subject to confirmation of available water and sewer

utilities.  Thereafter, Leclezio and Snoqualmie Pass Utility District exchanged a series of

letters, primarily written by attorneys, through which Leclezio sought to confirm the right

to water and sewer hookups and in which the utility district denied any guarantee for

hookups.

On June 2, 2001, attorney R. Drake Bozarth sent a letter on behalf of Louis

Leclezio and Miller Shingle Company to the Snoqualmie Pass Utility District.  The letter

informed the utility district that a developer wished to acquire the property subject to the

district reconfirming in writing the total number of water and sewer hookups available.

On July 18, 2001, the Snoqualmie Pass Utility District replied to Drake Bozarth's letter:

> The District's current policies for property owners in the District
> seeking water service are set forth in Resolution No. 2001-3, adopted by the
> Board of Commissioners on March 14, 2001, and Resolution No. 2001-6,
> adopted by the Board of Commissioners on April 25, 2001.  Pursuant to
> Resolution No. 2001-6, a waiting list for the allocation of remaining and
> future water supply was established.

CP at 49.

On September 5, 2001, Drake Bozarth, on behalf of Louis Leclezio, advised the

Snoqualmie Pass Utility District that Leclezio prepaid for two hundred and thirty water

hookups and thirty-eight sewer hookups under ULID Nos. 4 and 7.  Bozarth again

requested that the utility district verify in writing the availability of water and sewer

service to the 76.8 acres.  On September 6, 2001, the utility district's attorney, Marc

Greenough, sent another letter to Bozarth. The letter read in part:

> With respect to your client's claim that your client's payment of ULID assessments is the equivalent of a system connection charge, there appears to be some misunderstanding in distinguishing ULID assessments and system connection charges. The District has authority to impose ULID assessments under RCW 57.16.050. The District has separate authority to impose system connection charges under RCW 57.08.005. In classifying customers, the District may in its discretion consider capital contributions made to this system including assessments. RCW 57.08.081.
>
> It appears that at certain times in the past, the District has maintained a policy of granting credits against system connection charges for ULID assessments that have been paid. However, a credit against a system connection charge is not the same as payment of the system connection charge itself. Please note that any credit for ULID assessments against future payment of system connection charges is at the discretion of the Board of Commissioners of the District. RCW 57.08.081.

CP at 57-58.

On September 18, 2001, Drake Bozarth, on behalf of Louis Leclezio, notified the Snoqualmie Pass Utility District by letter that its conduct and apparent rescission of its obligations by reason of his payment of the ULID assessments would cause a substantial decrease in the market value of SnoCadia. On September 23, 2003, Daniel Mallove, new counsel for the utility district, wrote to Brian Dorsey, new counsel for Louis Leclezio:

> Your August 6, 2003 letter also asked the District to confirm the entitlement of the Leclezio/Darland property to a certain number of water and sewer connections and the actual capacity of the District to meet what you describe as the District's "obligation under those entitlements."
>
> As you may be aware, the District wrote to R. Drake Bozarth, your clients' previous counsel, on November 15, 2001 concerning the issues you have raised. Please be advised that the District's position has not changed since that letter was sent. Specifically, it is the District's position that your clients do not have a guaranteed entitlement to any water and sewer

10

> connections to their property. Rather, pursuant to District Resolution No. 87-11, your clients received a monetary credit to be applied to the system connection charges to be paid by your clients as part of the District's issuance of a Certificate of Water Availability for the subject property.
>
> If your clients wish to obtain water or sewer service, they will need to file an appropriate application for service pursuant to the requirements of Resolution No. 2002-05 or any other applicable resolutions passed by the District.

CP at 63. Thereafter, the proposed sale of the property failed due to the refusal of the utility district to confirm the availability of water and sewer service to the property.

On June 12, 2003, Miller Shingle Company sold SnoCadia to Louis Leclezio, Michael Darland, and Myrna Darland. The deed specifically conveyed

> water rights, utilities, including Snoqualmie Pass Utility District water and sewer hook-ups, (believed, without warranty by grantor, to consist of 230 water hook-ups and 38 sewer hook-ups).

CP at 84. Under a related, but separate, contract between Louis Leclezio, on the one hand, and Michael and Myrna Darland, on the other hand, the Darlands would hold title to the entire property and would convey twenty-six acres to Leclezio on the satisfaction of certain conditions, including proof that the property was entitled to receive two hundred and thirty water hookups and thirty-eight sewer hookups. The Darlands intended a residential development on the land and christened the proposed development SnoCadia.

Currently the Snoqualmie Pass Utility District sewer main ends two thousand and two hundred feet from the southern line of SnoCadia. The utility district's water main

11

ends four thousand and five hundred feet from the property. No easements permit lateral lines to traverse between the two main lines and the 76.8 acres. Private landowners own some of the land between the water and sewer mains and SnoCadia. The Washington State Department of Transportation or United States Forest Service owns other intervening land.

At some unknown date, the Washington State Department of Transportation granted to Michael and Myrna Darland's predecessors a twenty-foot access easement to the property. Nevertheless, Kittitas County requires the Darlands to obtain two sixty-foot access easements in order to develop the acreage for residences.

PROCEDURE

The case has a long fifteen year history. On July 14, 2004, Michael and Myrna Darland and Louis Leclezio sued Snoqualmie Pass Utility District. The Darlands and Leclezio requested a declaratory judgment, a writ of mandamus, and damages for inverse condemnation, breach of contract, estoppel, and tortious interference. The Darlands and Leclezio asked for an order establishing their right to the delivery of services to the outside boundaries of SnoCadia in order to serve two hundred and thirty residential units with water and thirty-eight residences with sewer. The Darlands and Leclezio also sought an order compelling Snoqualmie Pass Utility District to lay lateral lines from its main trunk lines to the property's outside borders. Later the Darlands would demand that the utility district condemn intervening land to procure for the Darlands sixty-foot access

12

easements.

On August 30, 2004, the Snoqualmie Pass Utility District answered Michael and Myrna Darland's and Louis Leclezio's complaint and primarily denied the complaint's allegations. Nevertheless, the utility district admitted that, through the formation of ULID Nos. 4 and 7, it entered into a contract with the owners of property within those two ULIDs. The contract conferred special benefits to those property owners. The district raised many affirmative defenses, including the statute of limitations.

On January 25, 2005, Michael and Myrna Darland and Louis Leclezio moved for partial summary judgment on the following questions, among others:

> Issue No. 1: Did the District guarantee that the Property would receive 230.07 ERU's of water service and 38.37 ERU's of sewer service as a "special benefit" to the Property by assessing the Property for said service, when all assessments have been paid in full?
> . . . .
> Issue No. 3: Is the District obligated, at its sole expense, to extend the water and sewer mains to at least the boundary of each parcel comprising the Property, with sufficient capacity to deliver at least 400 gallons per day (gpd) of water per hook-up?

CP at 921-22 (boldface omitted).

The trial court granted in part and denied in part Michael and Myrna Darland's and Louis Leclezio's summary judgment motion. The trial court concluded that Michael and Myrna Darland and Louis Leclezio were entitled to receive two hundred and thirty hookups of water service at four hundred gallons per day per residence and thirty-eight hookups of sewer service as a special benefit under ULID Nos. 4 and 7. The court denied

13

summary judgment as to the question of whether the utility district must, at its expense, extend the water and sewer mains to the property boundaries. The court found competing facts as to whether the utility district agreed to extend service lines to SnoCadia.

In September 2005, the parties entered a memorandum of agreement tentatively resolving the dispute. Under the agreement, each party assumed separate responsibilities to seek necessary right-of-way permits and easements to create access to the 76.8 acres in order to allow development of SnoCadia. The Snoqualmie Pass Utility District incurred the primary responsibility of seeking utility related rights-of-way, easements, and permits. The Darlands assumed the primary responsibility to obtain all access related easements and permits, principally in the form of two sixty-foot wide access roads to the property in order to comply with county requirements for development. The procurement of easements was a condition to the memorandum agreement becoming a binding agreement and to the Darlands dismissal of this suit. On October 4, 2005, the parties entered a stipulation and order staying litigation pending settlement. For the next nine years, the parties unsuccessfully sought easements from third parties to accommodate development of SnoCadia.

On August 20, 2014, Michael and Myrna Darland filed their first amended complaint. The complaint alleged breach of contract, breach of implied covenant of good faith and fair dealing, negligence, inverse condemnation, estoppel, and unjust enrichment. The complaint sought damages and a declaratory judgment.

In January 2015, the Darlands again moved for partial summary judgment. The Darlands requested that the trial court compel the district to use its powers of eminent domain to condemn two sixty-foot-wide access and utility easements over privately held properties so that the Darlands' property could utilize the special benefits conferred by ULID Nos. 4 and 7.

The trial court denied Michael and Myrna Darland's second summary judgment motion. On April 16, 2015, the trial court entered the following order:

> (1) With respect to the issue of road access to plaintiff's [sic] property, because defendant does not have the legal authority to exercise its powers of eminent domain to condemn property for the purpose of providing road access to plaintiffs' property, plaintiffs are not entitled to judgment against defendant as a matter of law on that issue;
> (2) With respect to the issue of extending utility service to plaintiff's [sic] property, questions of fact exist as to (a) which party should pay for the costs of any eminent domain proceeding which may be necessary to acquire the property rights to extend utility service to plaintiff's [sic] property and (b) which party should pay for the costs of installation of the water and sewer mains needed to extend utility service to plaintiff's [sic] property; and
> (3) Consequently, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

CP at 1555. In its letter memorandum explaining its decision, the trial court observed that Snoqualmie Pass Utility District will not be required to provide access easements, but will be required to provide utility easements. The court wrote:

> As to the cost of bringing the utilities to the edge of the property, Judge Cooper explained in 2005 that a question of fact remains regarding whether defendant is required to, at its sole expense, extend water and sewer mains to the property boundary so that plaintiffs can enjoy the special benefits for which they have already paid. Accordingly, that

15

question remains in need of a trial.  While it may ultimately be determined after trial that defendant should pay for the legal costs of the eminent domain proceeding and that plaintiffs should pay for the "dirt work" (trenching and pipe costs), the court could also fashion some other sort of remedy.  In any event, it does at this point seem beyond dispute that defendant shall have to, whether it wishes or not, exercise its power of eminent domain to ensure that plaintiff has access to the sewer and water benefits already paid for.  "In order for a sewer to be susceptible of use to a given parcel of land, there must be access from said land to said sewer without passing through the property of other individuals." *Memorandum Decision*, page 9 (quoting *Towers v. Tacoma*, 151 Wash. 577, 583 (1929)).

CP at 1104.

On July 8, 2015, Michael and Myrna Darland filed a motion for partial summary judgment seeking to recover the monies paid to Snoqualmie Pass Utility District under ULID Nos. 4 and 7 for water and sewer service.  On October 22, 2015, the utility district cross-moved for summary judgment on the Darlands' claim for return of money paid.  On December 28, 2015, the trial court denied the Darlands' motion for partial summary judgment and granted the district's motion for summary judgment.  The trial court thereby dismissed the action for reimbursement.  In a memorandum decision, the trial court explained:

Having exhausted their ability to obtain adequate access to this property (and presumably develop it like originally envisioned), plaintiffs resort to the only remedy they can presently conceive of: a money judgment against defendant for the value paid of past assessments, plus interest.  This request is put forth with full knowledge that plaintiffs themselves never paid one penny towards the assessments in question: those assessments were paid for by the previous landowners.  The overall condition of the property was known, or should have been known, to plaintiff when it was purchased.  The price of the property when plaintiffs purchased it

necessarily included every facet of that property; and every tort, contract, easement or other legal burden cognizable at law was transferred with the property to the plaintiffs when they took that deed. There was then and is now no cognizable claim for recoupment of previously paid ULID assessments.

From the evidence presented it is clear that defendant has done nothing to harm plaintiffs or their property, and the assessments defendants previously collected from the previous landowners were legally collected and legally expended, and nothing has been presented by plaintiff which establishes a need to have a trial about anything. Defendant's motion should be granted, plaintiffs' motion should be denied, *and the case should be dismissed entirely.*

CP at 249, 710 (emphasis added). On December 28, 2015, the trial court entered an order granting the Snoqualmie Pass Utility District's summary judgment motion, which order reads, in part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that (1) Defendant's Cross-Motion for Summary Judgment is GRANTED; (2) Plaintiffs' Motion for Partial Summary Judgment Seeking to Recover All Monies Paid to District is DENIED; and this action is dismissed without fees or costs to either party.

CP at 250, 711.

Michael and Myrna Darland appealed and focused on forcing Snoqualmie Pass Utility District to condemn access easements to SnoCadia or to refund the special assessments paid. This court issued "no ruling as to whether the 2015 order dismissing the action abrogated the 2005 order obligating the utility district to provide water and sewer hookups." CP at 251. It also declined to answer the Darlands' first two issues raised on appeal. Those two issues included the following two questions:

> Issue 1: Is the Snoqualmie Pass Utility District obligated at its costs to extend the existing water and sewer lines to Darlands' property under ULID Nos. 4 and 7?
> Answer 1: We do not answer this question because the parties did not properly brief the issue.
> . . . .
> Issue 2: Did the trial court err when ruling that the Snoqualmie Pass Utility District lacks legal authority to condemn private property for access and utility easements benefitting the Darlands' property?
> Answer 2: We do not address this issue because the Snoqualmie Pass Utility District lacks any obligation to condemn property for the purpose of access to the Darlands' land.

CP at 251, 254. Regarding the Darlands' third issue, this court held that RCW 57.16.100 barred the Darlands' reimbursement claim.

On the first appeal, this court declined to address Snoqualmie Pass Utility District's contentions that the statute of limitations barred Michael and Myrna Darland's lawsuit and the Darlands lacked standing to assert claims against the utility district. This court affirmed the trial court's 2005 and 2015 summary judgment orders and remanded to the trial court "for what, if any, further proceedings are appropriate." CP at 263.

On November 21, 2017, Michael and Myrna Darland again moved, in superior court, for partial summary judgment. The Darlands sought to compel Snoqualmie Pass Utility District to use its statutory power of eminent domain to condemn the utility easements necessary to deliver water and sewer service to the boundary of SnoCadia. On November 22, 2017, the utility district cross-moved for summary judgment on the statute of limitations and other grounds.

On April 23, 2018, the superior court granted Snoqualmie Pass Utility District's

partial summary judgment motion and dismissed all of the Darlands' causes of action as

time-barred. In a letter ruling, the trial court explained that any claim for breach of

contract was extinguished by the statute of limitations before Michael and Myrna Darland

purchased SnoCadia. Also, the utility district had performed no wrongful act toward the

Darlands. According to the superior court, earlier summary judgment rulings

determining that the Darlands possessed a right to sewer and water hookups were wrong

in light of the statute of limitations. The court qualified its ruling by stating that the

Darlands might hold enforceable rights to hookups if they filed an engineered application

to the utility district. The superior court dismissed the lawsuit in its entirety.

LAW AND ANALYSIS

The superior court granted summary judgment to Snoqualmie Pass Utility District

based on the statute of limitations. In reviewing a summary judgment, this court engages

the same inquiry as the trial court. *Wolfe v. Department of Transportation*, 173 Wn. App.

302, 305, 293 P.3d 1244 (2013). Therefore, this court's review is de novo. *Briggs v.

Nova Services*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is proper

if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show the absence of any genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law. CR 56(c). This

court construes all facts and reasonable inferences in the light most favorable to the

19

nonmoving party. *Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999).

Michael and Myrna Darland contend that, in granting summary judgment to the district, the trial court erroneously concluded that all of their claims accrued in the 1980s when the predecessor to Snoqualmie Pass Utility District formed the utility local improvement districts and assessed property owners for the expenses of the local districts. The Darlands characterize their claims as seeking compensation for action of the utility district occurring in 2001. During that year, the utility district first declared an unwillingness to provide water services to the property. We agree. Because the Darlands sued within three years of Snoqualmie Pass Utility District's failure to assure service, the statute of limitations bars none of the remaining claims. At least a question of fact exists as to the timeliness of Michael and Myrna Darland asserting those claims.

Despite reversing summary judgment in favor of the utility district on the basis of the statute of limitations, undisputed facts permit us to grant the district summary judgment on two of Michael and Myrna Darland's causes of action. We address the defense of the limitation period first.

Law of the Case Doctrine

Before addressing the Snoqualmie Pass Utility District's defense of the statute of limitations, we must resolve a preliminary question. Michael and Myrna Darland assert that the law of the case doctrine bars the utility district from raising the defense because

the district raised the defense in a 2015 partial summary judgment motion and in the first appeal and because the superior court's 2005 ruling, affirmed in the first appeal by this court, included a finding that the utility district's first actionable conduct occurred on July 18, 2001.

Under the law of the case doctrine, questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal without a substantial change in the evidence. *State v. Worl*, 129 Wn.2d 416, 425, 918 P.2d 905 (1996). Accordingly, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are authoritatively overruled. *Greene v. Rothschild*, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966). In 1976, our Supreme Court adopted RAP 2.5(c)(2), codifying the law of the case doctrine:

> *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

The doctrine is discretionary, not mandatory. *Greene v. Rothschild*, 68 Wn.2d at 8.

After remand from this court, the superior court directly addressed whether the statute of limitations barred Michael and Myrna Darland's claims. The superior court never earlier addressed the question. Nor did we reach this question during the first appeal. We earlier ruled: "[b]ecause we affirm dismissal of Michael and Myrna

21

Darland's request for reimbursement of special assessments paid, we do not address

Snoqualmie Pass Utility District's contentions that the statute of limitations bars the

claim . . . ."  CP at 262.  The "claim" referenced is the Darlands' claim for reimbursement

of the special assessments that the predecessor in interest paid.  Since no court earlier

addressed the utility district's argument that the statute of limitations barred the

remaining claims, the law of the case doctrine does not apply.

Contract Claim

We analyze the application of the statute of limitations for some of the discrete

claims asserted by Michael and Myrna Darland against Snoqualmie Pass Utility District.

We begin with the contract claim.

The parties agree that Snoqualmie Pass Utility District's formation of ULID Nos.

4 and 7 created a written contract between the utility district and owners of the property

within the two local districts, under which the utility district would provide water and

sewer services to property.  Both parties also agree that RCW 4.16.040 imposes a six year

limitation period on "an action upon a contract in writing, or liability express or implied

arising out of a written agreement."  RCW 4.16.040(1).  The Darlands and the utility

district disagree as to the accrual date of the Darlands' breach of contract claim.

The statute of limitations in a contract action begins to run at the time of the

breach.  *City of Algona v. City of Pacific*, 35 Wn. App. 517, 521, 667 P.2d 1124 (1983).

The Darlands argue that the utility district first breached the parties' contract on July 18,

22

2001. On that day, the Snoqualmie Pass Utility District replied, to Louis Leclezio's counsel's request for confirmation of water and sewer hookups, with a letter avoiding the question and stating that the utility district now kept a waiting list for the allocation of its water supply. The Darlands filed their complaint less than three years later, on July 14, 2004.

The utility district claims that the 2001 letter did no repudiate any contract, but rather its precedent board of commissioners created a waiting list for services. We reject the utility district's argument for several reasons. First, even if the 2001 resolutions only created a waiting list, the creation of such a list breached the contract for services since no waiting list existed when Snoqualmie Pass Utility District created the utility local improvement districts, imposed assessments on the land, and agreed to provide services in consideration for the assessments. Second, if we adopted the utility district's position, no breach of contract has yet to occur such that the statute of limitations has not even commenced to run. Third, the superior court ruled in 2005 that the Darlands were entitled to water and sewer service. This refusal occurred in 2001 and the Darlands timely filed their breach of contract claim in 2004.

Snoqualmie Pass Utility District argues that the statute of limitations on the utility local improvement district contracts accrued in 1983 and 1987. The utility district relies on this court's language in the first appeal, "[i]f Count Von Holnstein determined that the problematic circumstances resulted in a lack of benefits to the 76.8 acres, he had the right

23

to file a lawsuit challenging the ULIDs within" six years. CP at 262. The district

mischaracterizes this court's language, however. This passage from the opinion

discussed the lack of sixty-foot access easements to the SnoCadia land, i.e. "conditions

that erect difficulties for SnoCadia to benefit from the ULIDs," obstacles which were also

present at the time of the ULID assessments. CP at 262. If the Darlands were

challenging the validity of the initial ULID assessments from the 1980s, then the utility

district's reasoning would apply.

Implied Covenant of Good Faith and Fair Dealing

Michael and Myrna Darland asserted no cause of action for the implied covenant

of good faith in the original complaint filed on July 14, 2004. The Darlands inserted this

claim in their first amended complaint, filed on August 20, 2014. Civil Rule 15(c) states,

"[w]henever the claim or defense asserted in the amended pleading arose out of the

conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading, the amendment relates back to the date of the original pleading." The

Darlands' claim for breach of the implied covenant arises from the same conduct as

alleged in the Darlands' original complaint. Because this cause of action benefits from

the relation back doctrine, for statute of limitations purposes, we treat the claim as filed

on July 14, 2004. Thus, the cause of action based on the covenant survives the statute of

limitations. Both parties agree that claims for the breach of good faith and fair dealing, a

tort, must be brought within three years. RCW 4.16.080.

Negligence

Michael and Myrna Darland asserted their claim for negligence for the first time in the 2014 amended complaint. The cause of action surrounds the same conduct supporting the breach of contract claim. Therefore, this claim also survives the statute of limitations because of the relation back doctrine under CR 15(c).

The statute of limitations for a negligence action is three years. RCW 4.16.080(2). The statute of limitation period begins to run when the plaintiff's cause of action accrues. *Giraud v. Quincy Farm & Chemical*, 102 Wn. App. 443, 449, 6 P.3d 104 (2000). Usually, the cause of action accrues when the plaintiff suffers injury, however, the three year limitations period is tolled "until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." *Giraud v. Quincy Farm & Chemical*, 102 Wn. App. at 449.

The utility district maintains that negligent injury to property claims are subject to a two year statute of limitations under RCW 4.16.130. While we agree with the utility district's legal contention, we find the argument factually misplaced. The Darlands ground their negligence claim on the utility district's failure to take the steps necessary to deliver water and sewer to the property, not for any physical damage to the land. We render no decision as to the validity of the merits of the negligence claim since the parties do not brief this issue.

Estoppel

We now begin to address causes of action about which questions exist as to the viability of the claims on the merits in addition to the limitation period. Although Michael and Myrna Darland refer, in their amended complaint, to a claim for estoppel, they now characterize the cause of action as one for promissory estoppel. In addition to arguing the statute of limitations bars the promissory estoppel action, Snoqualmie Pass Utility District contends the merits of the cause of action fails as a matter of law. We disagree.

Snoqualmie Pass Utility District relies on *Spectrum Glass v. Public Utility District No. 1 of Snohomish*, 129 Wn. App. 303, 317, 119 P.3d 854 (2005), which stands for the proposition that promissory estoppel does not apply when a contract governs. Stated differently, the promise must lie outside the confines of a binding agreement. Nevertheless, Michael and Myrna Darland rely on some promises not contained in the writings surrounding formation of the utility local improvement districts. Those promises include comments of utility district employees and a ledger showing SnoCadia entitled to sewer and water hookups.

Snoqualmie Pass Utility District argues, in the alternative, that the promises relied on by the Darlands occurred long before the couple acquired the property, and therefore any cause of action is barred by the statute of limitations. Nevertheless, the cause of action for promissory estoppel accrues on breach of the promise not when the defendant

relays the promise. Again, since there is a genuine issue of material fact as to when the Darlands' claims accrued, summary judgment was improper.

Unjust Enrichment

The Darlands' claim for unjust enrichment alleges, in relevant part:

> As a result of the District's refusal and/or failure to deliver the special benefits for which the Subject Property was assessed and paid for, the District has been unjustly enriched by the amount of the assessments, penalties, and interest it received relating to the Subject Property. Said amounts, together with pre-judgment interest, should be disgorged and restored to Darland.

CP at 213. Based on this language, Snoqualmie Pass Utility District contends that the Darlands' unjust enrichment claim merely restates their dismissed claim for reimbursement of assessments paid.

A claim for unjust enrichment may be brought by a party to recover the value of a benefit retained even absent any contractual relationship, if fairness and justice require it. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). Unjust enrichment includes three elements: (1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. *Young v. Young*, 164 Wn.2d at 484-85. The Darlands do not meet element two. The Darlands never paid for the assessments, and so they cannot establish the received benefit was at their expense.

27

We may affirm summary judgment on any basis supported by the record. *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008). We affirm dismissal of the unjust enrichment claim on its merits.

Inverse Condemnation

Snoqualmie Pass Utility District argues that the subsequent purchaser rule bars the Darlands' inverse condemnation claim. We agree.

In *Hoover v. Pierce County*, 79 Wn. App. 427, 433, 903 P.2d 464 (1995), this court reinforced the general rule that a grantee or purchaser of land cannot sue for a taking or injury occurring prior to his acquisition of title, but rather, the subsequent purchaser may sue only for a new injury or taking. A prior owner's right to damages for injury to property does not pass to a subsequent purchaser unless expressly conveyed. *Crystal Lotus Enterprises Ltd. v. City of Shoreline*, 167 Wn. App. 501, 505 n.8, 274 P.3d 1054 (2012). An exception to the doctrine exists when additional governmental action causes a measureable decline in market value during the claimant's ownership. *Wolfe v. Department of Transportation*, 173 Wn. App. at 308 (2013).

Louis Leclezio paid the assessments. Any additional governmental action purportedly occurred on July 18, 2001. At that time, Miller Shingle Company and Leclezio owned the property. Michael Darland and Myrna Darland did not acquire title to the property until 2003.

28

Utility Easements

Michael and Myrna Darland assign error on appeal to the trial court's refusal to rule that the utility district possessed legal authority to condemn the utility easements necessary to deliver to SnoCadia the 230 water hook-ups and 38 sewer hook-ups, which the land should receive, as a matter of law, pursuant to this court's prior decision. The superior court did not address this contention because of dismissal of claims based on the statute of limitations.

The Darlands allege that the utility district admitted that it has the statutory authority to condemn utility easements. The Darlands also contend that the utility district holds a duty to condemn the utility easements necessary to extend its water and sewer lines to the Darlands' property. The utility district argues that, since the trial court did not reach this issue, this appeals court lacks any ruling to review on appeal. We agree with the utility district.

In denying the Darlands' partial summary judgment motion, the trial court ruled:

> Viewed with limitation of actions principles in mind, the only issue that has ever been justiciable in this case is whether the subject property is entitled to the special benefits promised under ULID 4 and ULID 7. That issue has been settled. The property is entitled to those benefits. To date, plaintiffs have never properly attempted to access these benefits. They have never submitted a properly engineered application to the District for approval. If such an application were submitted and unreasonably rejected, it seems that plaintiffs could then sue to enforce their rights.

CP at 1540. The court's letter ruling involves no discussion of whether the utility district has the statutory authority to condemn private land for utility easements.

The Darlands observe that the utility district admitted in prior briefing to the trial court that it has the statutory authority to condemn utility easements. The utility district wrote:

> The District clearly has the authority to condemn property for the purpose of installing water or sewer lines and other utility facilities on property, and the District clearly has the express authority to condemn land and interests in land for that purpose. *See* RCW 57.08.005(1), (3), (5), and (7).

CP at 534. The Darlands also cite a portion of this court's prior decision wherein this court discussed a letter sent by the utility district's counsel, John Milne, in which he "recognized a contractual obligation of the utility district to provide an extension of the utility services to the Darlands' land and the need for the extension of the utility easement to fulfill this duty." CP at 245. The Darlands cite to other statements uttered by this court in its prior decision, but mischaracterize the quoted language. The misinterpreted language dealt with access easements, not utility easements.

When the trial court has not reached an issue, this court lacks a ruling to review. An appellate court may decline to reach issue where not considered by trial court when granting summary judgment. *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 609, 94 P.3d 961 (2004).

2017 Court of Appeals Opinion

Finally, the Darlands ask this court to revisit its prior decision, which declined to decide whether the utility district has authority to condemn access easements to SnoCadia. The Darlands contend that this court incorrectly ruled that the Darlands provided no evidence that the utility district represented it would provide access easements to SnoCadia and this court mistakenly commented that the Darlands failed to cite authority for the argument. Snoqualmie Pass Utility District replies that this court cannot or should not change its prior decision. We agree with the utility district.

RAP 2.5(c)(2) provides that, "[t]he appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review." This court will grant reconsideration of an identical legal issue in a subsequent appeal of the same case when the holding of the prior appeal is clearly erroneous and the application of the law of the case doctrine would result in manifest injustice. *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988).

Michael and Myrna Darland strenuously argue that, during the first appeal, they provided evidence of promises made by Snoqualmie Pass Utility District that it would provide access easements. Nevertheless, in this second appeal the Darlands still fail to cite the record for any promise uttered by the utility district about access easements.

In this second appeal, the Darlands reference their prior briefing to establish a legal obligation on behalf of Snoqualmie Pass Utility District to procure access easements. The Darlands reiterate that, under RCW 8.12.030, the utility district has the same powers that cities and towns have to condemn land for water and sewer systems. They state RCW 57.02.030 mandates that the statute be liberally construed to carry out its purposes and objectives. According to the Darlands, the utility district cannot fulfill its contractual obligation to the Darlands to provide water and sewer hookups if SnoCadia lacks access. Nevertheless, as in the prior appeal, the Darlands cite no Washington cases showing the power to condemn land for a utility user to gain ingress and egress to the user's land.

With the repetitive arguments and citations from prior briefing, the Darlands fail to show how this court's prior ruling is "clearly erroneous" and how the application of the law of the case doctrine results in "manifest injustice" under RAP 2.5(c)(2). Therefore, we again decline to address the question as to whether the district has the authority to condemn access easements for the benefit of Michael and Myrna Darland.

CONCLUSION

We affirm the superior court's dismissal of Michael and Myrna Darland's claims for unjust enrichment and inverse condemnation. We reverse the dismissal of the Darlands' other causes of action and remand for further proceedings consistent with this opinion.

No. 36002-4-III
*Darland v. Snoqualmie Pass Utility District*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.